OPINION. Leech, Judge: The respondent added to the income of the petitioner in the taxable year the amount of $182,249.58. The correctness of his action gives rise to the only issue in controversy. Petitioner contends the amount represents “patronage dividends” and is the property of 100 wholesale druggists who operate petitioner as a cooperative agency, or constitutes payments made pursuant toa definite liability and deductible as an ordinary business expense. Petitioner, organized under the Business Corporation Law of New York State, has, since its incorporation, filed Federal corporate income tax returns. No claim is made that petitioner is an exempt corporation within the meaning of section 101 of the Internal Revenue Code. The gist of petitioner’s contention appears to be that, although petitioner is a business corporation, it functions as a cooperative corporation and is merely a collection agency for a voluntary unincorporated association comprising the 100 wholesale druggists who hold the shares of its capital stock in equal proportions. Does the record warrant such a conclusion ? We think not. Petitioner holds regular meetings of its stockholders and directors. The board of directors appoints the officers, prescribes and supervises their duties, fixes their salaries, and controls the distribution of its funds. Petitioner enters into contracts with manufacturers to furnish certain services for an agreed fee. That a part of the services which, under the contract, petitioner agrees to furnish, requires the cooperative effort of the 100 wholesalers, does not, we think, alter the situation. The contract is that of petitioner. It alone is entitled to enforce payment for the services contracted for. The payments made by the manufacturers to petitioner, although computed on the basis of the voluntary purchases by the 100 wholesalers, belong to petitioner. Petitioner has income from other sources. It has investments and reserves. The board of directors fixes the amounts to be deducted for operating expenses and the amount of reserves to be retained for emergencies. The functions we have above outlined are clearly beyond the ordinary powers and duties of a mere collection agency. Petitioner neither buys for nor sells anything to the 100 wholesale druggists who constitute its stockholders. Its principal function is to furnish to the manufacturer the services specified in its contract. The payments the manufacturer makes under the contract are the property of the petitioner. The wholesale druggist is under no obligation to the manufacturer. Purchases are not compulsory. If no purchases are made, no benefit is received. Under the membership agreement, the wholesaler agrees to “assist” petitioner “in every legitimate manner possible in the performance of the services contracted for, all in keeping with the spirit and intent of such organization.” Just what that embraces by way of a. legal obligation on the part of the member is difficult to surmise. This indefinite and general provision makes it doubtful whether the “Membership” contract serves a purpose other than as a vehicle for the wholesaler waiving his rights to dividends on his shares of the capital stock in the petitioner, and in lieu thereof to receive these so-called “participation distributions.” We perceive in the membership contract no enforceable legal liability on the part of petitioner to make any definite and specific payments so as to entitle it to a deduction of the amounts distributed as ordinary and necessary expenses of the business. The circuitous method adopted for distributing what is in fact taxable income of the petitioner does not permit it to escape its Federal tax liability. We think it clear from this record that petitioner was functioning as a business corporation and not as a mere collection agency operating as a cooperative corporation. Our conclusion is based on the particular facts here presented. It will serve no useful purpose to review other authorities. We sustain the respondent’s action in adding to petitioner’s income, for the taxable year involved, the sum of $182,249.58. There remains for consideration the propriety of respondent’s action in assessing a penalty of $8,567.56 for failure to file an excess profits tax return for the taxable year 1940. It is conceded that no such return was filed. Under section 291 of the Internal Revenue Code, the penalty is to be imposed “unless it is shown that such failure is due to reasonable cause and not due to willful neglect.” For 30 years petitioner has been filing its Federal income tax returns showing no income and showing these service fees credited to members as a liability for accounts payable. On at least two previous occasions the revenue agents have inquired of the petitioner about such treatment of these service fees. Upon being informed of the facts, those agents referred the question of the proper treatment of these fees to higher authority. Later, the revenue agents advised petitioner that its treatment was approved. Relying on this approval, petitioner filed no excess profits tax return for 1940, because such treatment resulted in no taxable income. We think such facts are even more favorable to the taxpayer than those revealed in Hugh Smith, Inc., 8 T. C. 660, in which we struck the penalty. Under such circumstances, we hold that the failure to file such return was based upon a reasonable belief that it was not required and that the imposition of the penalty is not justified. Decision will he entered under Rule 50.