CONWAY COUNTY FARMERS
ASSOCIATION, Appellant,

v.

UNITED STATES of America, Appellee.

No. 78–1198.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1978.

Decided Dec. 6, 1978.

---

Before GIBSON, Chief Judge, MATTHES, Senior Circuit Judge, and MARKEY, Chief Judge.*

MARKEY, Chief Judge, U. S. Court of Customs and Patent Appeals.

Appeal by plaintiff, Conway County Farmers Association (CCFA), from summary judgment of the District Court for the Eastern District of Arkansas (The Honorable Myron H. Bright, Circuit Judge, sitting by designation) favoring the United States (government), and dismissing with prejudice CCFA's complaint for refund of federal income taxes of $8,020.31, plus interest, paid for fiscal years 1970 and 1971.[1] CCFA, a nonexempt cooperative, was denied deduction of patronage dividends because it did more than 50% of its business with non-members. We reverse.

## Background

The material facts appear in the uncontested findings of the District Court and in the parties' fact stipulation.

CCFA is an Arkansas agricultural cooperative association engaged primarily in the sale of agricultural supply products. It was organized in 1949 under Act 153 of 1939, as amended (Ark.Stat.Ann. §§ 77–1001 through 1027) (the enabling legislation for agricultural cooperative associations), with its principal place of business in Morrilton, Conway County, Arkansas. CCFA is not now "exempt" from federal income taxation as a farmers' cooperative organization under Internal Revenue Code (I.R.C.) § 521 (26 U.S.C. § 521).[2] CCFA had been exempt

Friday, Eldredge & Clark, Little Rock, Ark., argued, for appellant; Lewis H. Mathis (argued) and Byron M. Eiseman, Little Rock, Ark., on brief.

Timothy B. McBride (argued), Leonard J. Henzke, Jr., Gilbert E. Andrews, Attys., and M. Carr Ferguson, Asst. Atty. Gen., Washington, D. C., and W. H. Dillahunty, U. S. Atty., Little Rock, Ark., on brief, for appellee.

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. Reported at 78–1 USTC ¶ 9334 and 41 AFTR 2d 78–1052. The district court held a hearing on cross-motions for summary judgment, dictated findings and conclusions from the bench, and entered written findings and conclusions after receipt of post-hearing briefs.

2. § 521. Exemption of farmers' cooperatives from tax

(a) Exemption from tax
 A farmers' cooperative organization described in subsection (b)(1) shall be exempt from taxation under this subtitle except as otherwise provided in part I of subchapter T (sec. 1381 and following). Notwithstanding part I of subchapter T (sec. 1381 and following), such an organization shall be considered an organization exempt from income taxes for purposes of any law which refers to organizations exempt from income taxes.
(b) Applicable rules
(1) Exempt farmers' cooperatives

before November 30, 1969 (the end of its fiscal year), but it voluntarily surrendered that status and now operates as a "non-exempt" cooperative.

Though the stipulated facts describe CCFA as "an agricultural supply cooperative," its Amended Articles of Incorporation describe it as both a purchasing and marketing cooperative:

ARTICLE II

THE ASSOCIATION IS FORMED FOR THE FOLLOWING PURPOSES:

To purchase, acquire, distribute, and sell for and to members any or all agricultural products produced by the members or any products derived from processing of agricultural products produced by the members and to engage in any activity in connection with the picking, gathering, harvesting, receiving, assembling, handling, grading, standardizing, packing, preserving, drying, processing, transporting, storing, financing, advertising, selling, marketing and distributing of any agricultural products delivered by its members or any of the products derived therefrom. To purchase for its members seed, feed, [etc.] and to conduct any other business authorized or allowed to associations organized under [enabling Act], all

on a cooperative basis for the mutual benefit of members, and other patrons as producers of agricultural products.[3]

Membership in CCFA may be obtained, on application, by any agricultural producer or person having farm income from crop rent. Members must (1) purchase a $10 common stock certificate, (2) refrain from competing with CCFA, and (3) trade with CCFA. Members must also agree that distributions with respect to patronage or volume of business conducted with CCFA shall be treated as required by I.R.C. §§ 1383 and 1385 (26 U.S.C. §§ 1383 and 1385).

The authorized capital stock of CCFA consists of common stock, owned by the members, and two classes of preferred, noncumulative, nonvoting stock. Net income is first allocated to preferred stock in an amount not to exceed 6% of its par value. Income attributable to business with nonmembers is set aside as a tax-paid reserve. Remaining net income is allocated to member patrons in proportion to the volume of business each conducted with CCFA during the fiscal year.

For fiscal years ended November 30, 1970, and November 30, 1971, CCFA conducted a greater volume of business with nonmembers than with members: [4]

The farmers' cooperatives exempt from taxation to the extent provided in subsection (a) are farmers', fruit growers', or like associations organized and operated on a cooperative basis (A) for the purpose of marketing the products of members or other producers, and turning back to them the proceeds of sales, less the necessary marketing expenses, on the basis of either the quantity or the value of the products furnished by them, or (B) for the purpose of purchasing supplies and equipment for the use of members or other persons, and turning over such supplies and equipment to them at actual cost, plus necessary expenses.

\* \* \* \*

(4) Transactions with nonmembers

Exemption shall not be denied any such association which markets the products of nonmembers in an amount the value of which does not exceed the value of the products marketed for members, or which purchases supplies and equipment for nonmembers in an amount the value of which does not exceed the value of the supplies and

equipment purchased for members, provided the value of the purchases made for persons who are neither members nor producers does not exceed 15 percent of the value of all its purchases.

3. Article II also provides:

This Association may handle any or all of the above products, either by purchases or sale, of non-members of the Association provided that the Association shall not deal in the products of non-members to an amount greater in value than such as are handled by it for its members.

That CCFA did not amend its Articles, following surrender of its tax-exempt status, and that it may have operated beyond its charter in 1970–71, are not relevant to the issue here.

4. Nothing said in the course of determining the statutory requirement for treatment of patronage dividends in this tax-refund suit bears any relation to compliance with federal antitrust laws by cooperatives whose members agree not to compete, and which fail to meet the quantitative requirement for exemption of marketing

| Fiscal Year Ended | Nonmember Business | Member Business | Total Business | % Nonmember Business |
|---|---|---|---|---|
| 11/30/70 | $493,196 | $320,303 | $813,499 | 61% |
| 11/30/71 | $564,176 | $354,968 | $919,144 | 62% |

For 1970 and 1971, CCFA filed corporation income tax returns (IRS Form 1120) claiming deductions for patronage dividends paid to members in the amount of $14,520 and $5,465, respectively. Upon audit, the Internal Revenue Service (IRS) ruled that CCFA was not entitled to deductions for patronage dividends and assessed deficiencies of $6,818 for 1970, and $1,202.31, for 1971.

CCFA paid the assessed deficiencies, plus interest. Its administrative claims for refund having been denied, it instituted this suit under 28 U.S.C. § 1346(a)(1).

## The District Court

The district court concluded that "[t]he question whether [CCFA] is entitled to the

tax benefits available to organizations under Part I of Subchapter T of the Internal Revenue Code of 1954 depends on the interpretation of the term 'operating on a cooperative basis'" in I.R.C. § 1381(a)(2) (26 U.S.C. § 1381(a)(2)).[5]

Citing Revenue Ruling 72–602, 1972–2 Cum.Bull. 511,[6] the district court held that to be considered a "corporation operating on a cooperative basis" under § 1381(a)(2) an organization must do more than 50% of its business with members. On the basis of that Ruling and the historical nature of "cooperatives," the lower court concluded that CCFA, by conducting the majority of its business during fiscal years 1970 and 1971 with nonmembers, failed to qualify as a cooperative for federal income tax purposes and, therefore, the patronage dividends[7] paid to its member-stockholders were not deductible under I.R.C. § 1382(b) (26 U.S.C. § 1382(b)).[8]

cooperatives under 7 U.S.C. § 291. Such circumstances would indicate, however, that the fact situation giving rise to the present case is likely to be extremely rare.

5. § 1381. Organizations to which part applies
(a) In general
This part shall apply to—
(1) *any organization exempt from tax under section 521 (relating to exemption of farmers' cooperatives from tax), and*
(2) *any corporation operating on a cooperative basis other than an organization—* * * *. [Emphasis added.]

6. Rev.Rule 72–602 states in part:
Section 1381(a)(2) of the Code indicates that Part I of Subchapter T of the Code, which governs the taxation of cooperatives, applies to any corporation "operating on a cooperative basis." Fundamental to "operating on a cooperative basis" is a mutual joinder of interests in the risks and benefits of the organization. Subchapter T does not preclude a nonexempt cooperative from dealing with nonmembers on a for-profit basis. There is no requirement that in order for an organization to obtain the benefits of a nonexempt cooperative under Subchapter T that both members and nonmembers be treated equally. *If, however, a cooperative does operate on a for-profit basis with its nonmembers then in order for it to be considered a corporation "operating on a cooperative basis" for purposes of section 1381(a)(2), it must do more than 50 percent in value, of its business with members.* [Emphasis added.]

7. The term "patronage dividend" is defined in I.R.C. § 1388(a) (26 U.S.C. § 1388(a)):
§ 1388. Definitions; special rules
(a) Patronage dividend
For purposes of this subchapter, the term "patronage dividend" means an amount paid to a patron by an organization to which part I of this subchapter applies—
(1) *on the basis of quantity or value of business done with or for such patron,*
(2) *under an obligation of such organization to pay such amount, which obligation existed before the organization received the amount so paid, and*
(3) *which is determined by reference to the net earnings of the organization from business done with or for its patrons.*
Such term does not include any amount paid to a patron *to the extent that (A) such amount is out of earnings other than from business done with or for patrons, or (B) such amount is out of earnings from business done with or for other patrons to whom no amounts are paid, or to whom smaller amounts are paid, with respect to substantially identical transactions.*

8. § 1382. Taxable income of cooperatives
* * * *
(b) Patronage dividends and per-unit retain allocations
In determining the taxable income of an organization to which this part applies, there shall not be taken into account amounts paid during the payment period for the taxable year—

The district court further concluded that "[i]nasmuch as [CCFA] does not qualify for treatment as a cooperative organization under the federal income tax laws, [CCFA] must be treated for tax purposes as an ordinary for-profit corporation."

CCFA had argued that, if all of its operations were to be taxed as though made for profit, the "patronage dividends"[9] should be deductible as "ordinary and necessary business expenses" under I.R.C. § 162 (26 U.S.C. § 162). The district court denied that claim, "inasmuch as there is no evidence of any profit-making intention of [CCFA] in making such payments."

## The Issue

The dispositive question of law on appeal is whether CCFA was an organization "operating on a cooperative basis" within the meaning of Subchapter T, I.R.C. § 1381 (a)(2), supra note 3.[10]

## OPINION

As the district court stated from the bench, this "case is really one of first impression" involving a "close question." The business transactions of the earliest cooperatives were conducted entirely with or for their members alone, and none of those transactions was taxed. When cooperatives began to do some business with nonmembers, the tax-exemption of all their transactions was continued for a few years. Congress then enacted the predecessor of 26 U.S.C. § 521, supra note 2, limiting total tax-exemption to cooperatives meeting certain criteria, including a requirement that they do more than 50% of their business in value with members. Nonexempt cooperatives thereafter had their transactions with nonmembers taxed on a for-profit basis and their transactions done with members taxed on a cooperative basis, i. e., patronage dividends to members were deducted (on the apparent theory that the moneys involved had never in reality belonged to the organizations).[11] It is uncontested that Congress intended "patronage dividends" to be deductible. I.R.C. § 1382(b), supra note 8.

In 1972, a cooperative marketing a single product for 10 members and 90 nonmembers sought a revenue ruling. Because the 10 members were large producers, the value of the member business comprised over 75% of the total. The specific question was whether the cooperative qualified under Subchapter T, in view of its doing 90% of

---

(1) as patronage dividends (as defined in section 1388(a)), to the extent paid in money, qualified written notices of allocation (as defined in section 1388(c)), or other property (except nonqualified written notices of allocation (as defined in section 1388(d))) with respect to patronage occurring during such taxable year; * * *
For purposes of this title, any amount not taken into account under the preceding sentence shall, in the case of an amount described in paragraph (1) * * *, be treated in the same manner as an item of gross income and as a deduction therefrom, * * * .

9. The government's brief concedes that the payments CCFA made to its member-patrons "met the requirements for deductibility contained in Code Sections 1382 and 1388," and were thus "true patronage dividends."

10. We need not reach the question of whether the patronage dividends were deductible as "ordinary and necessary expenses" under I.R.C. § 162. The apparent anomaly is noted, however, in a denial of tax treatment of particular transactions as patronage dividends because of the nature of the organization, regard-

less of the nature of the transaction, and denial of tax treatment of the same transactions as ordinary and necessary expenses because of the nature of the transaction, regardless of the nature of the organization. A nonexempt cooperative doing 51% in value of its transactions with members, has the 49% of its transactions with nonmembers taxed on a for-profit basis. In the present case, the 60% of business done with nonmembers will be taxable on a for-profit basis. A nonexempt cooperative doing 99% in value of its business with nonmembers would have all of those transactions taxed on a for-profit basis. Tax treatment based on the nature of a cooperative's transactions would have at least the merit of placing substance over form. See, in another context, Frank Lyon Co. v. United States, 435 U.S. 561, 572–73, 98 S.Ct. 1291, 55 L.Ed.2d 550 (1978).

11. The government says "policies behind the taxation of tax-exempt cooperatives are relevant to measuring legislative intent behind taxation of nonexempt cooperatives" in arguing that the intent is the same. We find to the contrary.

its business transactions with nonmembers. The IRS, in Revenue Ruling 72–602, *supra* note 6, found the number of transactions irrelevant, the criteria being the *value* of business done. The cooperative was found qualified because 75% of its business in value was done with members. The IRS, however, went beyond the facts presented to it and, by way of dictum, interpreted the words "operating on a cooperative basis" in § 1381(a)(2) as a requirement that a cooperative must do more than 50 percent in value of its business with members.

Thus, determination of the issue requires statutory interpretation. That function was described by the Court in *United States v. Amer. Trucking Ass'ns.*, 310 U.S. 534, 542, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940): "It is to construe the language so as to give effect to the intent of Congress."

In giving effect to congressional intent, the relevant provisions of the same revenue act, here Subchapter T,[12] must be considered as an entirety, not in isolation. *Alexander v. Cosden Pipe Line Co.*, 290 U.S. 484, 496, 54 S.Ct. 292, 78 L.Ed. 452 (1934). We begin with the unquestioned congressional intent that admittedly true patronage dividends, such as those here involved, should be deductible by an organization "to which this part applies." § 1382(b). The issue is whether that intent is broad enough to include such patronage dividends when an organization does more business in value with nonmembers than with members, *i. e.,* whether Congress intended that that circumstance alone should render Part I inapplicable and make patronage dividends actually paid non-deductible.

In determining whether an exception was intended by Congress to the deductibility of patronage dividends, the relevant provisions of Subchapter T are the two paragraphs of § 1381(a) making Part I of that subchapter applicable to two types of organizations: § 1381(a)(1) defines the first type as "any organization exempt from tax under section 521 * * * ; " § 1381(a)(2) defines the second type as "*any* corporation operating on a cooperative basis other than an organization [specifying exceptions immaterial here]." (Emphasis added.)[13]

To meet the "exempt from tax under section 521" language of § 1381(a)(1), an organization must meet certain organizational, operational, and quantitative requirements. The § 521 organization is required to be: (1) "organized * * * on a cooperative basis" (§ 521(b)(1)), (2) "operated on a cooperative basis" (§ 521(b)(1)), and (3), with respect to the quantitative requirement (transactions with nonmembers), "[e]xemption shall not be denied any such association which markets the products of nonmembers in an amount the value of which does not exceed the value of the products marketed for members * * * " (§ 521(b)(4)).

The § 1381(a)(2)-type organization is defined solely in terms of an operational requirement: "operating on a cooperative basis." In marked contrast to § 1381(a)(1)'s incorporation of § 521, Congress did not require that § 1381(a)(2)-organizations

---

12. Subchapter T was added to the Internal Revenue Code of 1954 by § 17 of the Revenue Act of 1962, Pub.L. 87–834, 76 Stat. 960, 1045 (October 16, 1962).

13. On different facts, courts have faced the "operating on a cooperative basis" question. *Brookings Plywood Corp. v. United States*, 78–1 USTC ¶ 9103, 40 AFTR 2d 77–6119 (D.Ore.1977), involved a nonexempt worker-owned cooperative, contending it was not "operating on a cooperative basis" because no patronage allocations to stockholder-employees were made in its records, no patronage dividends were paid, and the by-law requiring patronage dividends had been retroactively abolished. The court agreed. *Farmers Union Mar-*

*keting & Processing Assn. v. United States*, 77–1 USTC ¶ 9213, 39 AFTR 2d 77–9631 (D.Minn.1977), involved an agricultural cooperative, contending it was not "operating on a cooperative basis" because during two years in which it had net losses, no patronage dividends were paid. The court disagreed, holding that the test is not whether the cooperative actually paid patronage dividends but whether it would have been obligated to do so if it had made a profit. In both cases the phrase "operating on a cooperative basis" was interpreted without reference to the relative amount of business in value done with members and nonmembers. Indeed, both cases turned on whether patronage dividends were paid or owed.

transact more business with members than with nonmembers.[14] That CCFA is "organized" on a cooperative basis is unquestioned. That it is "operating" on a cooperative basis is unquestioned, except for the amount of business done with nonmembers. If "operated" on a cooperative basis required that over 50% of business be done with members, the third requirement of § 521 would be superfluous. It is well established that statutes will not be interpreted as though Congress enacted superfluous provisions.

Significance resides not only in Congress' inclusion of a quantitative requirement in § 1381(a)(1), and the absence thereof from the very next paragraph of the statute, but in the facility with which Congress has often stated quantitative requirements when it so intended. *See, e. g.*, (1) 7 U.S.C. § 291 (quantitative requirement in definition of cooperative in Capper-Volstead federal antitrust exemption); (2) 12 U.S.C. § 1141j(a) (quantitative requirement in definition of cooperative for farm credit purposes); (3) 12 U.S.C. § 2129 (quantitative requirement in definition of cooperative for borrowing from bank for cooperatives); (4) 49 U.S.C. § 303(b) (quantitative requirement in definition of cooperative for ICC exemption); and (5) 12 U.S.C. § 3015 (§ 105(a), Pub.L. 95–351, 92 Stat. 499, 506 (August 20, 1978)) (quantitative requirement in definition of cooperative in National Consumer Cooperative Bank Act).

The sole basis for the government's contention that CCFA was not "operating on a cooperative basis," lies in CCFA's having conducted more than 50% of its business with nonmembers in fiscal years 1970 and 1971. The government further argues that its Rev.Rul. 72–602, *supra* note 6, correctly interpreted § 1381(a)(2), because a "true cooperative" must operate "primarily" on a cooperative basis to obtain the Subchapter T patronage dividend deduction, that is, "the cooperative must do over 50 percent in value of its business with members on a patronage dividend (*i. e.*, nonprofit) basis."

 The words of statutes, including the tax laws, "should be interpreted where possible in their ordinary, everyday senses." *Crane v. Commissioner*, 331 U.S. 1, 6, 67 S.Ct. 1047, 1051, 91 L.Ed. 1301 (1947) (footnote omitted). Absent a contrary indication somewhere in the statute, the ordinary meaning of "operating on a cooperative basis" includes the conduct of some operations on a cooperative basis. In its dealings with its members, CCFA was necessarily "operating on a cooperative basis." That it was also operating on a for-profit basis, in its dealings with nonmembers, does not change the nature of its cooperative-type operations. The wording of § 1381(a)(2) is broad and comprehensive, reflecting a broad intent of Congress. It would do violence to that intent to read the statute, as the government would have us do, as though it contained words not present, *i. e.*, as though it read "operating primarily on a cooperative basis." [15] Congress having inserted no quantitative requirement in § 1381(a)(2), after having done so in § 1381(a)(1) and in so many other acts dealing with cooperatives,

14. The government erects a straw man in arguing that AT&T and General Motors could deduct payments to their customers or suppliers who are also stockholders if its position is not upheld. Such payments would not be to "members" and would not be the "true patronage dividends" involved here. Moreover, AT&T and General Motors are to no extent "operating on a cooperative basis." Nor are they likely, in view of federal antitrust law, to enter exclusive-dealing and non-competing agreements with any customers or suppliers. In all events, the IRS and the courts would have no difficulty in finding that such corporations were not "operating on a cooperative basis." See, for examples of cases denying claims to cooperative status by organizations at least ostensibly so operating, *Mississippi*

*Valley Portland Cement Co. v. United States*, 408 F.2d 827 (5th Cir.), *cert. denied*, 395 U.S. 944, 89 S.Ct. 2015, 23 L.Ed.2d 462 (1969), and *Druggists' Supply Corp. v. Commissioner*, 8 T.C. 1343 (1947).

15. Congress employed the very term defining cooperatives eligible for loans from the National Consumer Cooperative Bank:

 * * * chartered or operated on a cooperative, not-for-profit basis for producing or furnishing goods, services or facilities, *primarily* for the benefit of its members * * *. [Emphasis added.]

Sec. 105(a), National Consumer Cooperative Bank Act, *supra*.

neither we nor the IRS are at liberty to make that insertion in § 1381(a)(2).

Determination that the language of the statute itself imposes no quantitative requirement may be viewed as putting an end to inquiry. The statutory language appears unambiguous. Nonetheless, an illumination of congressional intent may on occasion be gleaned from legislative history. In this regard, the Supreme Court, in deciding tax questions, has frequently referred to legislative committee reports. *See, e. g., Don E. Williams Co. v. Commissioner,* 429 U.S. 569, 97 S.Ct. 850, 51 L.Ed.2d 48 (1977); *Neuberger v. Commissioner,* 311 U.S. 83, 61 S.Ct. 97, 85 L.Ed. 58 (1940); *Hassett v. Welch,* 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858 (1938).

In the instant case, the House and Senate Reports referring to § 1381 state: "The tax treatment outlined here applies to the so-called tax-exempt farmers' cooperatives, to other farm cooperatives, to consumer cooperatives, and also to other corporations operating on a cooperative basis." [16] The recognition of different groups or classes of organizations, including three called "cooperatives" and one described as formed of "other corporations" which are "operating on a cooperative basis" casts an uncertain light. The classes may be differentiated on the basis of title, *i. e.,* "tax-exempt," "other farm," "consumer" and "other." They may also be differentiated on the existence of a

quantitative requirement thought to be inherent in the word "cooperatives," and the absence of a quantitative requirement for "other" corporations which are not total "cooperatives" but are "operating on a cooperative basis." [17] In all events, we find nothing in the legislative history of the applicable statutory provisions to indicate a congressional intent to insert a quantitative requirement in § 1381(a)(2).

The government also asserts, post-hoc, that the "primarily cooperative" test of Rev.Rul. 72–602 was "suggested by Congress" in enacting the tax return filing deadline for Subchapter T cooperatives. I.R.C. § 6072(d) (26 U.S.C. § 6072(d)) [18] allows a cooperative to file its tax return 9½ months after the end of the tax year if it is "under an obligation to pay patronage dividends * * * in an amount equal to at least 50 percent of its net earnings from business done with or for its patrons * * *." From this provision for an extended filing deadline, the government constructs an argument concerning deductibility, saying § 6072(d) "strongly suggests that Congress expected that only corporations conducting at least half their business on a patronage, nonentrepreneurial basis would be entitled to such patronage deductions."

Section 6072(d), however, was passed simultaneously with Subchapter T and does not support the government's basic position in this case. That section grants an extend-

---

**16.** H.R.Rep.No.1447, 87th Cong., 2d Sess. (1962), 1962–3 Cum.Bull. 405, 483; S.Rep.No. 1881, 87th Cong., 2d Sess. (1962), 1962–3 Cum. Bull. 707, 819, U.S.Code Cong. & Admin.News 1962, pp. 3297, 3416.

**17.** The government nowhere asserts that CCFA is a "sham cooperative," or employs only "cooperative camouflage," or had "paper patrons" as members, or that fraud or dissembling of any kind is involved. The sole basis for disallowing CCFA's admitted patronage dividends is the amount of business done with nonmembers.

**18.** § 6072. Time for filing income tax returns
 \* \* \* \* \*
 (d) Returns for cooperative associations
 In the case of an income tax return of—
 (1) an exempt cooperative association described in section 1381(a)(1), or

 (2) an organization described in section 1381(a)(2) which is under an obligation to pay patronage dividends (as defined in section 1388(a)) in an amount equal to at least 50 percent of its net earnings from business done with or for its patrons, or which paid patronage dividends in such an amount out of the net earnings from business done with or for patrons during the most recent taxable year for which it had *such net earnings,*
 a return made on the basis of a calendar year shall be filed on or before the 15th day of September following the close of the calendar year, and a return made on the basis of a fiscal year shall be filed on or before the 15th day of the 9th month following the close of the fiscal year.

ed filing deadline to those organizations "described in section 1381(a)" which are under an obligation to pay, or did pay, patronage dividends equalling "at least 50 percent of its net earnings from business done with or for its patrons." Other organizations "described in section 1381(a)(2)" must meet the normal deadline. Thus § 6072(d) continues the distinction made in § 1381(a) between exempt and nonexempt earnings.

The legislative committee reports further demonstrate the absence of merit in the government's § 6072(d) argument. The House and Senate Reports state:

> 6. *Returns of cooperatives.*—Because tax-exempt cooperatives under present law are given until 8½ months after the end of the year to allocate, or pay, patronage dividends, they also have been given the same period of time in which to file their tax returns. This additional time is necessary since whether or not there is an allocation or payment of the dividends, determines the size of the taxable income of the cooperative.
>
> Allowing taxable cooperatives this same time in which to make cash and qualified allocations of patronage dividend distributions, and to redeem nonqualified allocations, has presented the same filing problem in the case of their returns as well. Therefore, the bill provides that the tax return filing date for cooperatives generally is to be 8½ months after the end of their taxable year. *However, to prevent an organization allocating relatively little of its income on a patronage basis from obtaining this postponement in the filing date for its return* [emphasis added], the bill limits this postponement to those organizations which are either exempt cooperatives or (1) are under an obligation to allocate, or pay, at least 50 percent of their net patronage earnings in patronage dividends or (2) actually allocated, or paid, at least that percentage of their earnings in patronage dividends during the last year in which they had any such earnings.[19]

The quoted passage reflects the intent of Congress that an organization "allocating relatively little of its income on a patronage basis," i. e., less than 50%, would continue to be an organization under § 1381(a)(2), i. e., an organization "operating on a cooperative basis," but that such organization would not be granted the extended filing date of § 6072(d). Though the section concerns quantity of income, rather than quantity of business in value done, it reflects congressional recognition that a nonexempt cooperative under § 1381(a)(2) may be doing relatively little patronage business, and to that extent argues against the government's basic position in this case.

The phrase "operating on a cooperative basis," though not specifically defined in the statute, is not, for the reasons outlined above, ambiguous. Our task is not to substitute our judgment for that of the Commissioner, but to determine whether the Commissioner's rule "implement[s] the congressional mandate in some reasonable manner." *United States v. Correll*, 389 U.S. 299, 307, 88 S.Ct. 445, 450, 19 L.Ed.2d 537 (1967).

The language of § 1381(a)(2), and the legislative reports consistent therewith, impel the conclusion, however, that Rev. Rul. 72–602, *supra* note 6, is an unreasonable interpretation of the statute, making an unwarranted exception to the intent expressed in § 1382(b) by adding as it does a quantitative requirement in conflict with the intent of Congress. A revenue ruling cannot narrow the scope of a statute when Congress has intended otherwise. *Neuberger v. Commissioner, supra*, 311 U.S. at 89, 61 S.Ct. 97.

The judgment is reversed and the case is remanded to the district court with instructions to enter judgment for plaintiff (CCFA). It is so ordered.

Reversed and Remanded.

---

19. *Id.*, 1962–3 Cum.Bull. at 486; 1962–3 Cum.Bull. at 822, U.S.Code Cong. & Admin.News 1962, p. 3420.