The COLUMBUS FRUIT AND VEGETA-
BLE COOPERATIVE ASSOCIATION,
INCORPORATED, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 599–83T.

United States Claims Court.

July 9, 1985.

Joseph F. Dillon, Detroit, Mich., for plaintiff.

Neil V. Birkhoff, Washington, D.C., with whom were Asst. Atty. Gen., Glenn L. Archer, Jr., Mildred L. Seidman, and Theodore D. Peyser, Jr., for defendant.

## ORDER

NETTESHEIM, Judge.

Plaintiff has moved for reasonable litigation costs. Defendant opposes.

### FACTS

In *Columbus Fruit & Vegetable Cooperative Ass'n v. United States*, 7 Cl.Ct. 561 (1985), *appeal docketed*, No. 85–2421 (Fed. Cir. May 28, 1985), the case underlying this motion for attorneys' fees, the Columbus Fruit and Vegetable Association, Inc. ("plaintiff"), claimed deductions of $15,408

under the Internal Revenue Code ("I.R.C.") § 1382(b)(1), 26 U.S.C. § 1382(b)(1) (1982), for patronage dividends paid to its members during the fiscal years ending March 29, 1980, and March 28, 1981. The deduction under section 1382(b)(1) is available for "any corporation operating on a cooperative basis." I.R.C. § 1381(a)(2).

On September 15, 1982, the Internal Revenue Service (the "IRS") mailed a preliminary notice of proposed deficiency to plaintiff. Plaintiff neither filed a written protest nor sought an appeals office conference, but instead requested the issuance of a statutory notice of deficiency. The IRS responded with a deficiency notice dated January 13, 1983. On February 24, 1983, plaintiff paid the assessed deficiency and simultaneously filed a claim for refund for the taxable years in issue. Although the IRS did not first issue a preliminary notice of disallowance, a statutory notice of disallowance was proffered to plaintiff on July 25, 1983. On September 30, 1983, plaintiff filed its complaint in this court.

Throughout the underlying proceeding, defendant relied upon Rev.Rul. 72–602, 1972–2 C.B. 511, in contending that plaintiff did not operate on a cooperative basis within the meaning of I.R.C. § 1381(a)(2) and thus was not entitled to a deduction under section 1382(b)(1). In rejecting defendant's position and granting plaintiff a tax refund in the amount of $2,130.56, the court held that Rev.Rul. 72–602 does not provide a reasonable interpretation of the statutory phrase "operating on a cooperative basis" found in section 1381(a)(2). 7 Cl.Ct. at 564.

By motion filed on April 24, 1985 pursuant to I.R.C. § 7430, plaintiff now seeks an award of litigation costs incurred in connection with the pursuit of its claim before the IRS and in this court.

## DISCUSSION

I.R.C. § 7430 was enacted on September 3, 1982, as part of the Tax Equity and Fiscal Responsibility Act, Pub.L. No. 97–248, 96 Stat. 324, 572 (1982) (codified in scattered sections of 26 U.S.C.) (the "TE-FRA"), and was rendered applicable to actions in the United States Claims Court by the Tax Reform Act of 1984, Pub.L. No. 98–364, 98 Stat. 494, 961 (1984) (codified in scattered sections of 26 U.S.C.). This is the first case brought in this court pursuant to the amended statute.

Section 7430 entitled "Awarding of Court Costs and Certain Fees" provides in part:

(a) In General.—In the case of any civil proceeding which is—

(1) brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, and

(2) brought in a court of the United States (including the Tax Court and the United States Claims Court),

the prevailing party may be awarded a judgment for reasonable litigation costs incurred in such proceeding.

(b) Limitations.—

(1) Maximum dollar amount.—The amount of reasonable litigation costs which may be awarded under subsection (a) with respect to any prevailing party in any civil proceeding shall not exceed $25,000.

(2) Requirement that administrative remedies be exhausted.—A judgment for reasonable litigation costs shall not be awarded under subsection (a) unless the court determines that the prevailing party has exhausted the administrative remedies available to such party within the Internal Revenue Service.

Defendant contends that relief should not be granted under section 7430 because plaintiff did not exhaust all available administrative remedies and because the position taken by defendant in the underlying case was reasonable.

*Exhaustion of Administrative Remedies*

■ Treas.Reg. § 301.7430–1, 26 C.F.R. § 301.7430–1 (1985), supplies four exceptions to the exhaustion requirement of section 7430(b)(2). Under section 301.7430–1(f)(3)(ii), the exception applicable in this

case, a litigant is excused from pursuing administrative remedies if he

> [d]id not receive a preliminary notice of proposed disallowance prior to issuance of a statutory notice of disallowance and the failure to receive such notice was not due to actions of the party (such as the failure to supply requested information or a current mailing address to the district director or service center having jurisdiction over the tax matter); ...

After filing a claim for refund with the IRS, plaintiff received a statutory notice of disallowance dated July 25, 1983. Although defendant concedes that a preliminary notice of proposed disallowance was never issued, it contends that plaintiff's conduct precluded such issuance.

To support this contention, defendant refers to the last paragraph of plaintiff's refund claim of February 24, 1983, which states, "Please act on these claims and issue notices of claim disallowance at the earliest possible date so that litigation may be commenced without undue delay." Neither this statement nor the effect thereof supplies defendant with justification for plaintiff's failure to receive a preliminary notice of proposed disallowance. Treas. Reg. § 301.7430(f)(3)(ii) indicates that if a preliminary notice is not received, the IRS nevertheless satisfies its obligation to issue such notice where receipt fails to occur due to the taxpayer's own actions of neglecting "to supply requested information or a current mailing address." The obligation is not satisfied if the IRS is in possession of all necessary information and capable of accomplishing issuance, but chooses not to do so. In this case plaintiff's statement created no obstacle to issuance of the preliminary notice contemplated by Treas.Reg. § 301.7430–1; the IRS simply chose not to do so. Because a preliminary notice was not received and defendant's justification therefor is inadequate, plaintiff is excused from the exhaustion of administrative remedies requirement of section 7430(b)(2).

*Prevailing Party—Reasonableness of the Government's Position*

■ Under section 7430(a)(2) reasonable litigation costs may be awarded to the "prevailing party" in the underlying litigation. Section 7430(c)(2) provides:

> (A) In general.—The term "prevailing party" means any party to any proceeding described in subsection (a) (other than the United States or any creditor of the taxpayer involved) which—
>
> (i) establishes that the position of the United States in the civil proceeding was unreasonable, and
>
> (ii)(I) has substantially prevailed with respect to the amount in controversy, or
>
> (II) has substantially prevailed with respect to the most significant issue or set of issues presented.

The predominant issue * for decision under section 7430(c)(2) concerns the question of whether the Government's position in the underlying litigation was unreasonable.

Although the language of section 7430 sets the standard in cases such as this as one of reasonableness, the Federal Circuit's decision in *Broad Avenue Laundry & Tailoring v. United States*, 693 F.2d 1387 (Fed.Cir.1982) (award of attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) (1982) ("the EAJA")), further refines this standard. Adoption of the teachings of *Broad Avenue* and other cases decided under the EAJA is justified in cases to be determined pursuant to section 7430 of the TEFRA. Section 7430 was promulgated merely to remedy in tax cases what section 2412(d)(1)(A) of the EAJA neglected to provide for in the area. Accordingly, section 7430 relieved Congress' concern regarding the failure of the EAJA to provide fee awards for cases brought in the United States Tax Court. While it allayed this concern, section 7430, pursuant to design, simultaneously created uniformity in the rules applicable to fee awards in tax

---

* As a preliminary matter, it is undisputed that plaintiff has satisfied both section 7430(c)(2)(A)(ii)(I) and (II), although satisfaction of one subsection is all that is necessary. In the under-lying litigation, plaintiff "substantially prevailed with respect to the amount in controversy ... [and] with respect to the most significant issue ... presented."

cases in the United States Claims Court, Tax Court, and district courts. *See Sharpe v. United States*, 607 F.Supp. 4 (E.D.Va. 1984) (section 7430 was intended to do no more than supplant section 2412(d)(1)(A) with respect to tax matters). Otherwise, both sections 7430 and 2412(d)(1)(A) share the same general goal—the award of attorneys' fees in matters in which the Government has proceeded unreasonably. *See* Staff of Joint Comm. on Taxation, 97th Cong., 2d Sess., General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982, at 444–45 (Joint Comm. Print 1982) [hereinafter cited as "Joint Committee Explanation"].

*Kaufman v. Egger*, 584 F.Supp. 872 (D.Me.1984), thoroughly compares both sections, concluding that while section 2412(d)(1)(A) states that fees shall be awarded unless "the court finds that the position of the United States was substantially justified...." and section 7430 states that the prevailing party must "[establish] that the position of the United States in the civil proceeding was unreasonable, ..." there is nevertheless "no dispositive difference between the two standards." 584 F.Supp. at 877 n. 1. The court agrees with the analysis in *Kaufman.*

The Federal Circuit in *Broad Avenue* stated that "[f]ixed rules cannot be established for determining this issue...." and that resolution thereof "depends upon all the pertinent facts of the case." 693 F.2d at 1391; *accord Essex Electro Engineers, Inc. v. United States*, 4 Cl.Ct. 463, 464–65 (1984), *aff'd*, 757 F.2d 247, 252 (Fed.Cir. 1985) (citing cases). Where the Government's position has "a reasonable basis both in law and fact, no [fee] award will be made." 693 F.2d at 1391 (citing S.Rep. No. 253, 96th Cong., 2d Sess. 6 (1980); H.R. Rep. No. 1418, 96th Cong., 2d Sess. 10, *reprinted in* 1980 U.S.Code Cong. & Ad. News 4953, 4984, 4989).

Plaintiff contends that the Government's position in the underlying litigation was unreasonable because it was predicated upon authority unsuccessfully asserted in the Eighth Circuit in *Conway County*

*Farmers Ass'n v. United States*, 588 F.2d 592 (8th Cir.1978). The Government in *Conway*, seeking to deprive plaintiff of the deduction available under section 1382(b)(1), relied upon the quantitative criteria of Rev.Rul. 72–602 to assert that plaintiff failed to meet the precondition for the deduction—operation on a cooperative basis pursuant to I.R.C. § 1381(a)(2). The Eighth Circuit determined that "[t]he language of § 1381(a)(2), and the legislative reports consistent therewith, impel the conclusion ... that Rev.Rul. 72–602 ... is an unreasonable interpretation of the statute, making an unwarranted exception to the intent expressed in § 1382(b) by adding as it does a quantitative requirement in conflict with the intent of Congress...." 588 F.2d at 600. Despite the decision in *Conway*, the Government here nevertheless issued a notice of deficiency to plaintiff based upon Rev.Rul. 72–602. In the litigation that ultimately ensued, the court in *Columbus Fruit* relied heavily upon the *Conway* opinion and restated its holding. 7 Cl.Ct. at 564–65.

*Hallam v. Murphy*, 586 F.Supp. 1, 3 (N.D.Ga.1983), cited by plaintiff, is not authority that defendant's litigating position was unreasonable solely because an argument was urged in this court that had been rejected by a court of appeals in another circuit. The district court's prohibition against "[t]he continued assertion of a position ... that ... is based upon an erroneous assumption" is drawn from a context not paralleled in this case. Here at least a part of defendant's motivation for asserting in this court a position previously held unpersuasive by the Eighth Circuit was to establish conflicting decisions among the courts and ultimately gain Supreme Court review on the issue. The legislative history of section 7430 specifically states, "[T]he pursuit of litigation by the Government to establish a conflict among the United States Circuit Courts of Appeals would not be unreasonable." Joint Committee Explanation at 446.

The Supreme Court in *United States v. Mendoza*, 464 U.S. 154, 104 S.Ct. 568, 572,

78 L.Ed.2d 379 (1984), supplies a persuasive rationale for this statement in the Joint Committee's Explanation. There the Court voiced disfavor with a rule which would permit but a single adjudication of a particular issue and emphasized the benefit it derived "from permitting several courts of appeals to explore a difficult question," because, in deciding whether to grant a petition for certiorari, the Supreme Court adheres to a practice of waiting for conflicting decisions to arise with respect to a particular issue.

Although the Government does not proceed unreasonably by attempting to establish conflict in the circuits, the legislative history does not immunize defendant from a fee award on the ground that it is reasonable to pursue litigation for this reason alone. Accordingly, as *Broad Avenue* requires, the reasonableness of the Government's position must be further analyzed *vis a vis* "all pertinent facts of [this] case." 693 F.2d at 1391.

The core of the Government's position was that the purpose of I.R.C. § 1381(a)(2) is to further the congressional policy of favoring cooperatives. Defendant argued that the Eighth Circuit in *Conway* "did not consider whether Rev.Rul. 72–602 was a reasonable interpretation of the statutory phrase 'operating on a cooperative basis' in light of the definition of cooperatives and the principles of operating on a cooperative basis enunciated in [*Puget Sound Plywood, Inc. v. Commissioner*, 44 T.C. 305 (1965)]...." Def's Mtn. filed Jan. 11, 1985, at 28. Instead, according to defendant, the *Conway* court based its decision on "apples and oranges comparisons" between the quantitative requirements of Rev.Rul. 72–602 and I.R.C. §§ 521 and 6072(d), which appeared to show that I.R.C. § 1381(a)(2) was intended to have a broader application than the other two sections and, hence, than Rev.Rul. 72–602.

Defendant's position mischaracterized the *Conway* decision and fell into precisely the same trap of which it accused the Eighth Circuit—that of ignoring the principles of cooperative organization enunciated in *Puget Sound Plywood*. The *Conway* court's discussion began by rejecting the Government's argument that I.R.C. § 1381(a)(2) was intended to further the policies favoring cooperatives, observing instead that patronage dividends paid by nonexempt cooperatives had been deducted in the past "on the apparent theory that the moneys involved had never in reality belonged to the organizations." 588 F.2d at 596 & n. 11.

The exact same theory of the nature of patronage dividends formed the basis of the decision in *Puget Sound Plywood*, on which defendant relied so heavily in the underlying litigation. In that case the Tax Court confronted a position very similar to that adopted by the Government in *Conway* and in this litigation: that distributions made to its members by a non-exempt cooperative were not excludable from the cooperative's income. The Tax Court found the revenue ruling relied on by the Government to be "out of harmony with the basic distinguishing principles of cooperative organizations generally...." 44 T.C. at 322. The court plainly was referring to the distributions' character as rebates, belonging to the patrons at all times, and as to which the cooperative is a mere conduit or trustee. *See* 44 T.C. at 318–19.

The same theory was endorsed by the Court of Claims, *see St. Louis Bank for Cooperatives v. United States*, 224 Ct.Cl. 289, 294 n. 3, 624 F.2d 1041, 1044 n. 3 (1980) (citing *Farmers' Cooperative Co. v. Birmingham*, 86 F.Supp. 201, 205–14 (N.D. Iowa 1949)), by other courts, and by the IRS itself. *See Puget Sound Plywood*, 44 T.C. at 318–19 (citing cases and administrative rulings). Defendant recognized the character of patronage dividends as being "fruits and increases which the [members] produce ... [and which] are *vested in and retained by* the [members] themselves, rather than in and by the association, as such, which functions only as an instrumentality for the benefit of the [members]...." Def's Mtn. Filed Jan. 11, 1985, at 19–20 (quoting *Puget Sound Plywood*,

44 T.C. at 309 (emphasis in original)). To have taken the position, despite this recognition that such dividends are taxable to the association, was unreasonable.

Compounding the unreasonableness of its position, in criticizing the *Conway* court's argument based on the absence from I.R.C. § 1381(a)(2) of quantitative requirements like those in I.R.C. §§ 521 and 6072(d), defendant relied on a mischaracterization of Rev.Rul. 72–602. · I.R.C. 521(b)(4) provides tax-exempt status for any cooperative "which markets the products of nonmembers in an amount the value of which does not exceed the value of the products marketed for members...." Defendant argued that Rev.Rul. 72–602 imposed a less stringent test for non-exempt cooperatives under I.R.C. § 1381(a)(2) that 50 percent of such corporations' business be patronage business. The relevant portion of Rev.Rul. 72–602 provides, however, that "in order for [a cooperative] to be considered a corporation 'operating on a cooperative basis' for purposes of section 1381(a)(2), it must do more than 50 percent in value, of its business with members."

In its discussion of I.R.C. § 6072(d), the *Conway* court was primarily refuting the Government's suggestion that the section evinces a congressional intent to limit the applicability of subchapter T to corporations conducting half their business with patrons. Defendant credited the *Conway* court with constructing the elaborate argument, which defendant then attacked, that the groups of cooperative qualifying under I.R.C. § 6072(d) and Rev.Rul. 72–602 were the same and that, since the former constituted a smaller group than section 1381(a)(2) cooperatives, so did the latter. Far from doing so, the *Conway* court recognized that (in contrast to Rev.Rul. 72–602) section 6072(d) "concerns quantity of income, rather than quantity of business in value done" and modestly suggested that section 6072(d) "reflects congressional recognition that a nonexempt cooperative under § 1381(a)(2) may be doing relatively

little patronage business...." 588 F.2d at 600.

■ Finally, defendant argues that it was partially successful in the underlying litigation in that the judgment originally sought by plaintiff was reduced. Defendant argued that, assuming plaintiff was an organization "operating on a cooperative basis," it still was not entitled to deduct amounts paid to members as patronage dividends, but derived from business with nonmembers. In its motion for summary judgment, plaintiff offered calculations of its claimed refund which excluded the portion of the dividends objected to by defendant and which reduced plaintiff's claim from the $3,096 alleged in the complaint (which reflected the challenged amounts derived from nonmember business) to the $2,130.56 ultimately awarded.

The extent to which litigation should be dissected into discrete phases or claims for purposes of ruling on fee applications is a matter of judgment for the court. Because plaintiff did not argue its entitlement to deduct amounts derived from nonmember business but revised its claim to reflect defendant's correction, the issue was not sufficiently significant or discrete from plaintiff's overall success on the merits to warrant separate treatment for purposes of awarding attorneys' fees. *See Devine v. Sutermeister,* 733 F.2d 892, 896–97 (Fed. Cir.1984).

■ Having concluded that defendant assumed an unreasonable position during the litigation of the underlying case, it is unnecessary to review defendant's position at the administrative level. However, resolution is required of the separate issue of whether plaintiff may recover fees incurred during both the administrative and litigation stages of the underlying case. Plaintiff cites *Sharpe v. United States,* 84–1 U.S.T.C. ¶ 13,574, for the proposition that section 7430 permits the recovery of fees from the inception of a case at the administrative level. *Sharpe* is unpersuasive because it neglects to consider the legislative history of section 7430, which compels the

conclusion that a prevailing party may recover only those fees generated during the litigation of a case. H.R.Rep. No. 404, 97th Cong., 1st Sess. at 14, explains:

> Recoverable litigation costs include only the reasonable amount of costs which are incurred in the litigation of a civil tax action or proceeding.... The committee intends that the costs of preparing and filing the petition or complaint which commences a civil tax action be the first of any recoverable attorney's fees. Fees paid or incurred for the services of an attorney during the administrative stages of the case could not be recovered under an award of litigation costs.

(adopted in Joint Committee Explanation at 448–49); *see Zielinski v. United States,* 84–1 U.S.T.C. ¶ 9514 (D.Minn.1984).

■ Defendant objects to the amount claimed on the ground that an award exceeding the hourly rate of $75.00 is not warranted in the circumstances of this case. Unlike the EAJA, *see McCarthy v. United States,* 1 Cl.Ct. 446, 463 (1983), the TEFRA does not establish a base hourly rate. The matter has been evaluated and the court agrees with defendant that any award over a $75.00 hourly rate would be unjustified, if for no other reason than that plaintiff was retreading ground argued before other courts.

## CONCLUSION

Based on the foregoing,

IT IS ORDERED, as follows:

1. Plaintiff's motion is granted, and plaintiff shall recover $18,670.50. Entry of judgment shall be deferred pending the filings called for in ¶¶ 2–3 hereof.

2. By July 21, 1985, plaintiff shall supplement its motion with the required statement and affidavit as to the litigation costs billed for prosecuting its motion for fees.

3. Defendant may respond thereto by July 31, 1985.