**David KAUFMAN and Barbara Kaufman, Plaintiffs,**

v.

**Roscoe L. EGGER, Jr., Commissioner of Internal Revenue, and the United States Internal Revenue Service, Defendants.**

**Civ. No. 83–0262 P.**

United States District Court,
D. Maine.

May 8, 1984.

---

[1] Of course, defendant will be permitted to rebut and cross-examine any testimony relating to the loss of future wages.

John M.R. Paterson, Jerome F. Goldberg, Bernstein, Shur, Sawyer & Nelson, Portland, Maine, for plaintiffs.

D. Patrick Mullarky, Paul Barker, Tax Division, Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

### Introduction

This action was initiated by a Complaint for Injunction filed on August 4, 1983. The Complaint, in addition to seeking an

injunction restraining the Defendants from seeking to collect from Plaintiffs any taxes, interest or penalties for the Tax Year ending December 12, 1978, and payment of Plaintiffs' seized refund of $606 for the 1982 Tax Year, seeks recovery of Plaintiffs' "fees and expenses including attorney's and expert fees as required by 28 U.S.C. § 2412." The Complaint was accompanied by a Motion for Temporary Restraining Order supported by affidavits of the Plaintiff, David Kaufman, and an affidavit of Plaintiffs' accountant, George Violette. The Defendants never filed an Answer to the Complaint.

On September 30, 1983, the parties filed a Stipulation for Entry of Judgment waiving hearing and argument. The Court, on October 7, 1983, entered the agreed-upon Order and Judgment granting the requested injunctive relief concerning further efforts to collect taxes, penalties or interest for the 1978 Tax Year. Plaintiffs voluntarily dismissed their demand for repayment of the tax refund of $606 for the Plaintiffs' 1982 Tax Year, which had been seized by the Defendants.

Thereafter, on November 7, 1983, the Plaintiffs filed an Application for Attorney and Expert Fees and Costs. The motion predicates its claim for such relief on 28 U.S.C. § 2412(d)(1)(A) and 28 U.S.C. § 1920(1). It is supported by the affidavits of Plaintiffs' accountant, George N. Schatz, Plaintiffs' attorney, John M.R. Paterson, Esq., and the Plaintiffs, and by a memorandum arguing that the Plaintiffs are entitled to the relief sought by the motion under the statutory provisions cited in the motion. The Defendants filed on December 16, 1983, a response to Plaintiffs' motion discussing Plaintiffs' entitlement to the relief sought by the motion under *both* 28 U.S.C. § 2412 and 26 U.S.C. § 7430. Plaintiffs then filed on December 30, 1983, a Reply Memorandum asserting the claims made by the motion under *both* 28 U.S.C. § 2412 and 26 U.S.C. § 7430.

At oral argument the parties agreed that the Court should decide the Plaintiffs' entitlement to the relief sought by the pending motion by resolving the issues raised by the memoranda of the parties on the motion. As provided in Fed.R.Civ.P. Rule 15(b), "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Thus, Plaintiffs' entitlement to the relief sought pursuant to the provisions of 26 U.S.C. § 7430 is before the Court by agreement even though that issue was not initially generated by the Plaintiffs' motion. It was also agreed that the record for the Court's action on the motion would consist of the Complaint, the Motion for Temporary Restraining Order with its supporting affidavit, the Court's Order and Judgment, and the Motion for Costs and Expenses of the Plaintiffs with its supporting affidavits.

### Background of the Case

· The events precipitating this complaint began in February 1979 when Plaintiffs filed their 1978 United States Individual Income Tax Return with the Chicago District of the Internal Revenue Service (IRS). Shortly thereafter, in 1979, the Plaintiffs moved from their Chicago, Illinois residence to Norridgewock, Maine. Two years later, on March 2, 1981, the Chicago District of the IRS sent notice to Plaintiffs that their 1978 tax return was to be audited. Plaintiffs never received this notice, since it was sent to them at their Chicago address rather than to their Norridgewock, Maine residence.

On October 7, 1981, the IRS mailed a notice of adjustment of their tax liability to the Plaintiffs at a Stockton, Illinois address where Plaintiffs had never lived. The statutory notice of deficiency required by 26 U.S.C. § 6212 of the Internal Revenue Code also was sent erroneously to the Stockton, Illinois address. Eleven days later, the IRS acknowledged their error in a handwritten memo placed in the Kaufman's file stating that "Stat. Notice sent to wrong address." The memo also said that "[t]here is no other available address, however."

The IRS apparently did not pursue the matter further until May 16, 1983. On that date, the IRS sent Plaintiffs a notice at their present South Freeport, Maine address that it had credited the $606 refund due to Plaintiffs on their 1982 tax return to the amount of taxes unpaid for the year ending December 31, 1978. Not until eleven days *after* it sent notice of the seizure of Plaintiffs' refund did the IRS send notice to the Plaintiffs requesting payment of $23,857.60, the amount allegedly owed to the IRS by the Plaintiffs for the 1978 tax year.

Fearing that the IRS would take additional unannounced collection measures to recoup the taxes it claimed they owed, Plaintiffs filed a motion with this Court for a temporary restraining order, a complaint to enjoin the IRS from taking further collection measures against the Plaintiffs, and a complaint requesting that the IRS be ordered to pay Plaintiffs their $606 refund, with interest. Aware of its irreparable error, the IRS, together with the Plaintiffs, signed a Stipulation for Entry of Judgment on September 30, 1983, which resulted in the entry of an Order and Judgment.

### Discussion

#### A.

Plaintiffs initially predicate their right to recover attorney's fees on the Equal Access to Justice Act, Title 28, U.S.C. § 2412(d) (Supp.1983). Their reliance in that regard is misplaced, however.

Title 26 U.S.C. § 7430 of the Internal Revenue Code of 1954 (Supp.1982) was enacted on September 3, 1982, as part of the Tax Equity and Fiscal Responsibility Act (TEFRA). Pertaining to the awarding of court costs and certain fees, it provides:

(a) In general—In the case of any civil proceeding which is—

(1) brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, and

(2) brought in a court of the United States (including the Tax Court),

the prevailing party may be awarded a judgment for reasonable litigation costs incurred in such proceeding.

■ In their earlier action, Plaintiffs sought to recover the tax refund owed to them by the IRS, and to enjoin any further IRS collection efforts against them. The case plainly falls within the confines of § 7430. Moreover, 28 U.S.C. § 2412, upon which Plaintiffs rely, provides in pertinent part that:

(e) The provisions of this section shall not apply to any costs, fees, and other expenses in connection with any proceeding to which section 7430 of the Internal Revenue Code of 1954 applies.

Section 2412(e) is "applicable to actions or proceedings commenced after February 28, 1983." 28 U.S.C. § 2412 (Effective Date of 1982 Amendment). Plaintiffs maintain that "actions or proceedings" refers not exclusively to court actions or proceedings, but also to the administrative proceedings as instituted by the IRS in 1981 when it sent notice of audit to the Plaintiffs. The Court disagrees.

Section 292(e) of Public Law 97–248 provides that 26 U.S.C. § 7430 "shall apply to civil actions or proceedings commenced after February 28, 1983." This reference to "civil actions" implicitly addresses actions commenced in court. *See* Fed.R.Civ.P. Rule 2. Moreover, the legislative history reveals Congress's express intent that § 7430 shall "apply to civil tax actions or proceedings *in United States courts* ... commenced after" February 28, 1983. H.R.Rep. No. 404, 97th Cong.2nd Sess. 16 (1982); Senate Comm. on Finance, Technical Explanation of Committee Amendment, *reprinted in* 127 Cong.Rec. S 15595 (daily ed. Dec. 16, 1981) (emphasis added). Since Plaintiffs' action was not commenced in this Court until the filing of the complaint on August 4, 1983, it is plainly governed by 26 U.S.C. § 7430, rather than 28 U.S.C. § 2412.

#### B.

Before a party may be awarded "reasonable litigation costs" under 26 U.S.C.

§ 7430(a), that party must have met several pre-conditions. Foremost among them is the requirement of § 7430(b)(2) that administrative remedies provided by the IRS be exhausted by the prevailing party prior to pursuing court action. Defendants contend that Plaintiffs failed to meet this exhaustion requirement and therefore may not avail themselves of the costs and fees allowed under § 7430. However, if, in fact, no administrative remedies were available to Plaintiffs, then Plaintiffs would be able to pursue their remedies under § 7430.

Defendants refer to the Proposed Treasury Regulations on Procedure and Administration (1954 Code), § 301.7430–1 (40 Fed. Reg. 12560), and claim that Plaintiffs failed to exhaust the administrative remedies delineated therein. However, as Defendants conceded at oral argument, the regulations they cite are merely *proposed*. As of this writing, they have not been adopted as law and thus have no binding legal effect. U.S.Tax Cas. (CCH) ¶ 8975. Therefore, this Court must determine whether there were other administrative remedies available to, but not utilized by Plaintiffs, which would bar their recovery of fees and costs under § 7430.

Title 26 U.S.C. § 6212 requires the IRS to send a notice of deficiency to the taxpayer whose tax it finds to be deficient. Title 26 U.S.C. § 6213 provides that a taxpayer may, within 90 days, if residing in the United States, file a petition with the Tax Court for redetermination of the deficiency. Since Plaintiffs never received the statutory notice of deficiency, Plaintiffs never had cause to utilize this remedial procedure, and were thus not at fault for failing to do so.

Similarly, contrary to Defendants' assertions, 26 C.F.R. § 601.105 presents no administrative remedies available to Plaintiffs. Title 26 C.F.R. § 601.105(c)(i) provides for the taxpayer's access to the Appeals Office of the IRS, if, after a "correspondence examination" of the taxpayer's tax return, the taxpayer disagrees with the IRS's findings. Here again, Plaintiffs possessed no knowledge that any examination was taking place. Therefore, Defendants' contention that Plaintiffs should have applied to the Appeals Office for relief from a situation of which they were not even aware is without merit. Furthermore, Defendants do not cite to, and this Court is unable to determine the existence of, any other remedies available to Plaintiffs that they should have exhausted in order to be eligible for an award of costs under § 7430. We therefore find that the instant case falls within that class of cases alluded to by Congress when it stated that "[t]he committee recognizes that the exhaustion of remedies requirement may be inappropriate in some cases." H.R.Rep. 97–404 *supra*, at 13, Sen. Finance Comm. Report, *supra*, at § 15594.

■ Congress intended the court to be the final arbiter of the issue of exhaustion of remedies. "[T]axpayers are required to exhaust available administrative remedies [under § 7430] unless the court determines that, under the circumstances of the case, such .requirement is unnecessary." *Id.* Where, as here, the Plaintiffs had no notice that they had erred in the eyes of the IRS, until suddenly they discovered that their 1982 tax refund had been seized, this Court cannot find that Plaintiffs were required to exhaust their administrative remedies. If any administrative remedies were theoretically available to Plaintiffs, the time for their exhaustion was long past, since without giving Plaintiffs any notice, the IRS had already engaged its collection procedures.

■ In order to collect reasonable litigation costs under 26 U.S.C. § 7430, the party seeking relief must have prevailed in the earlier action. If the parties do not agree upon who is the prevailing party, the court must determine that issue, as is required in the instant case. *See* 26 U.S.C. § 7430(c)(2)(B). To facilitate its determination, this Court will look to 26 U.S.C. § 7430(c)(2)(A), which provides:

*In general*—the term "prevailing party" means any party to any proceeding described in subsection (a) ... which—

(i) establishes that the position of the United States in the civil proceeding was unreasonable, and

(ii)(I) has substantially prevailed with respect to the amount in controversy, or

(II) has substantially prevailed with respect to the most significant issue or set of issues presented.

Defendants concede that the Plaintiffs have prevailed with respect to the most significant issues: that the IRS's notice of deficiency was never received and that Plaintiffs' refund was wrongfully seized. Therefore, we need only decide whether the position of the United States in the civil proceeding was unreasonable.[1]

Plaintiffs and Defendants disagree about whether "the position of the United States in the civil proceeding," 26 U.S.C. § 7430(c)(2)(A)(i), which must be proved to be unreasonable, refers to the government's position at litigation or to its prelitigation stance. To resolve this issue, the parties examine the case law pertaining to the Equal Access to Justice Act, 28 U.S.C. § 2412, since almost no case law exists interpreting the recently enacted 26 U.S.C. § 7430. Like § 7430, 28 U.S.C. § 2412 provides that a prevailing party in a suit brought by or against the United States shall be awarded costs and fees. However, despite the similarities between the statutes, the Court finds that reference to § 2412 is inapposite here. Unlike § 7430, the language of § 2412(d)(1)(A) stating that the fees shall be awarded unless "the court finds that *the position* of the United States was substantially justified" is truly ambiguous. (Emphasis added.) In contrast, § 7430(c)(2)(A)(i) clearly states that the pertinent position is that which the govern-

ment took "in the civil proceeding." Thus, the provisions of 28 U.S.C. § 2412(d)(1)(A) and those of 26 U.S.C. § 7430(c)(2)(A)(i) are distinguishable. For guidance in interpreting the language of § 7430, we must therefore turn to sources relating directly to that statute.

■ The legislative history of § 7430 reveals that Congress intended the term "civil proceeding" to include "proceedings to enforce a summons, jeopardy assessments, wrongful levies and interpleaders." H.R. Rep. 97–404, *supra*, at 12, Sen. Finance Comm.Rep., *supra*, at S 15594. Plaintiffs' claim, as articulated by the Complaint, clearly addressed a wrongful levy upon Plaintiffs' tax refund by the IRS. Therefore, Plaintiffs' action constitutes a civil proceeding within the intended meaning of § 7430.

However, Defendants contend that since they did not actually try the case, but rather, stipulated to an entry of judgment, their position in the civil proceeding was reasonable. I cannot agree. A case does not need to reach the point of a trial in order to be a civil proceeding. Here, Plaintiffs initiated a civil proceeding when they filed their complaint. *See* Fed.R.Civ.P. Rule 3. Similarly, a case need not reach the point of trial before the parties become encumbered by legal fees and court costs.

This case presents special circumstances. As Defendants point out, the instant action was never litigated. Rather, it was resolved when Defendants stipulated to any entry of judgment in which Plaintiffs prevailed on the significant issues. However, Defendants' stipulation was, in effect, an admission of their wrongful conduct. This admission came only *after* Plaintiffs were

---

1. As a threshold matter, we will quickly dispose of Defendants' contention that the test of "unreasonableness" imposes a higher burden on Plaintiffs than does the corresponding test in 28 U.S.C. § 2412(d)(1)(A) of proving that the Government's position was not "substantially justified." Both the legislative history and the case law pertaining to 28 U.S.C. § 2412 are unanimous in their opinion that "[t]he test of whether or not a Government action is substantially justified is essentially one of reasonable-

ness." S.Rep. No. 253, 96th Cong.2d Sess. 6 (1980), H.R.Rep. No. 1418, 96th Cong.2d Sess. 10, *reprinted in* 1980 U.S.Code Cong. and Ad. News 4953, 4984, 4989; *Natural Resources Defense Council v. U.S. Environmental Protection Agency*, 703 F.2d 700, 707 (3d Cir.1983); *Broad Avenue Laundry and Tailoring v. United States*, 693 F.2d 1387, 1391 (Fed.Cir.1982). Therefore we find that there is no dispositive difference between the two standards.

compelled to initiate a civil proceeding which saddled them with burdensome court costs and fees of experts and attorneys. If the catalyst which induced Defendants to stipulate to entry of judgment was the unreasonableness of their prelitigation conduct, then, in principle, Defendants' prelitigation position was as unfairly burdensome to Plaintiffs as an unreasonable litigation position would have been. In either case, Plaintiffs would have been forced to bear the costs of an unnecessary civil proceeding.

■ Thus, where Defendants' stipulation to a judgment in Plaintiffs' favor implies an admission of the Defendant's wrongdoing, it is necessary to determine whether that guilt was predicated upon the unreasonableness of Defendants' conduct, or some other factor. The Court holds that where Defendants stipulate to entry of judgment, that "position of the United States" which it shall examine for the purposes of determining reasonableness shall be their prelitigation conduct which engendered the civil proceeding. This finding is consistent with Congress's intent that § 7430 should "enable taxpayers to vindicate their rights regardless of their economic circumstances." H.R.Rep. 97–404, *supra*, at 11, Sen. Finance Comm.Rep., *supra* at S 15594. Moreover, it coincides with Congress's desire that § 7430 will encourage taxpayers to settle cases, rather than litigate them in hopes of "winning an award of litigation costs." *Id.*

■ To aid the Court's determination of Defendants' litigation position, a few factual points bear repetition. Foremost among them is the IRS's acknowledgment in its February 16, 1982, memo to the Kaufman's tax file that the statutory notice of deficiency was sent to the wrong address and never received by Plaintiffs. Also noteworthy is the fact that at some unspecified point, the Chicago District of the IRS realized that the David and Barbara Kaufman whom it believed owed the IRS $23,857.60, were the same Kaufmans who filed their 1982 tax return claiming South Freeport, Maine to be their address. At that point of

elucidation, if not barred by the statute of limitations, the IRS could have notified Plaintiffs of the tax deficiency previously assessed against them. Instead, the record reveals that the IRS opted to seize Plaintiffs' 1982 tax refund, without notifying Plaintiffs in advance of the seizure. The IRS did not send Plaintiffs notice demanding payment of the alleged deficiency until eleven days after notice of the seizure was mailed. Plaintiffs' apprehension of being further surprised by Defendants' collection tactics led them to seek injunctive relief in this Court.

In *Randazzo v. U.S. Department of the Treasury Internal Revenue Service, et al.,* 581 F.Supp. 1235 (W.D.Pa.1984), the court determined the reasonableness of the government's position by examining not only the facts as revealed in the trial transcript but also by analyzing the conduct of the parties which culminated in the court action. Here, where no trial occurred, and thus, no trial transcript exists, this Court will examine the facts which precipitated the civil proceeding to determine whether Defendants' conduct was unreasonable. Those facts reveal that the IRS violated the Internal Revenue Code, justifying a conclusion by this Court that Defendants' conduct, and thus their position at the civil proceeding, was unreasonable. I so find.

My finding of the government's unreasonableness is enhanced by Congress's intention that in making its determination, this Court should take into account other factors, including:

(1) whether the government used the costs and expenses of litigation against its position to extract concessions from the taxpayer that were not justified under the circumstances of the case, (2) whether the government pursued the litigation against the taxpayer for purposes of harassment or embarrassment, or out of political motivation, and (3) such other factors as the court finds relevant.

H.R.Rep. 97–404, *supra*, at 12; Sen. Finance Comm.Rep., *supra*, at S 15594.

The Court finds that this case exhibits elements similar to those delineated in (1)

and (3) above, which are relevant to its determination. Defendants' seizure of Plaintiffs' tax refund violated the process mandated by the Internal Revenue Code for such procedures. Defendants' early willingness to stipulate to a judgment which was largely against them indicates at least a belated knowledge of their wrongdoing. Their actions thereby imply that although Defendants violated the law, they hoped that the forcefulness of their improper method of procuring tax monies would cause their collection action to go unchallenged by the average taxpayer. When Plaintiffs resisted and pursued a course of litigation, Defendants quickly conceded their culpability. Therefore, this Court feels that Defendants did hope to use "the costs and expenses of litigation against its position to extract concessions from the taxpayer that were not justified under the circumstances of the case." *Id.*

An "other factor" that we deem to be relevant in our determination, pursuant to Congress's instructions, is the tacit finding that this Court would be making if it were to hold that Defendants' position was reasonable merely because they stipulated to entry of judgment, thereby sparing the parties and the Court the additional time and expense of a trial. Defendants' conduct, as revealed in the agreed upon facts, smacks of negligence at its best, bad faith at its worst. Their seizure of Plaintiffs' refund violated not only propriety, but also the Internal Revenue Code. *See* 26 U.S.C. § 6212. The seizure amounted to a taking of Plaintiffs' property without according them due process of law. For this Court to determine that Defendants' position was reasonable merely because they stipulated to entry of judgment against them would

be to exhibit an unrealistic view of the facts. Such a finding would imply that when the IRS engages in reprehensible and illegal conduct which forces the innocent taxpayer to incur costly legal fees, the victim, rather than the perpetrator, shall bear the penalty for the IRS's misconduct. That finding would only encourage the IRS to further abuse its taxpayers. Such an encouragement would be obviously contrary to the Congressional intent underlying the statute.

Congress intended that the awarding of fees under 26 U.S.C. § 7430 "will deter abusive actions and overreaching by the Internal Revenue Service and will enable individual taxpayers to vindicate their rights regardless of their economic circumstances." H.R.Rep. 97–404, *supra,* at 11, Sen. Finance Comm.Rep., *supra,* at S 15594. In the instant case, the IRS's conduct was both abusive and overreaching. If Plaintiffs are unable to collect the fees and costs incurred in their totally justified civil action merely because Defendants stipulated to entry of judgment, then more naive or less affluent taxpayers would be discouraged from bringing suits which could potentially check further abuses by the IRS. It is clear that Defendants' "reasonable" position exhibited by their stipulation to entry of judgment was induced by their recognition of the totally unreasonable and illegal nature of their conduct in seizing Plaintiffs' refund without notice. Where Defendants' unreasonable actions forced Plaintiffs to seek court relief, it is only equitable that Defendants, rather than Plaintiffs, should have to bear the costs that their conduct generated.[2] Congress did not intend, and this Court cannot permit, Defendants to escape liability for the

---

**2.** In a case analogous to the instant one brought under 28 U.S.C. § 2412, the court applied the two-part test espoused in *Nadeau v. Helgemoe,* 581 F.2d 275, 281 (1st Cir.1978), to determine who was the prevailing party where "the defendant's voluntary compliance ... moots the lawsuit." *Premachandra v. Mitts,* 727 F.2d 717, 721 (8th Cir.1984). In that case, the defendant argued that its position was reasonable since its voluntary compliance amounted to a " 'gratuitous litigation courtesy.' " *Premachandra* at

722. The court held otherwise, however, noting the inherent injustice which would occur when "a party, like plaintiff, who has prevailed in a practical sense [is] denied attorney's fees simply because the government has, by virtue of its voluntary compliance, effectively precluded a final judicial determination on the merits." *Premachandra* at 723. Therefore, even though the defendant's position mooted the lawsuit, it was found to be unreasonable for the purposes of awarding attorney's fees under § 2412.

legal expenses they caused Plaintiffs to incur merely because they admitted, after the civil case had commenced in this Court but before it went to trial, that their conduct had been consistently wrong. On these facts the Plaintiffs are the prevailing parties in this action and are entitled to the relief available to them under § 7430.

## C.

Title 26 U.S.C. § 7430(a) states that the prevailing party "may be awarded a judgment for reasonable litigation costs incurred" in the proceeding. The statute further defines "reasonable litigation costs" to include reasonable court costs, reasonable expenses of expert witnesses pertaining to the civil proceeding, reasonable costs of studies, reports and tests deemed necessary by the court for the preparation of the party's case, and reasonable expenses paid or incurred for the services of attorneys in connection with the action. 26 U.S.C. §§ 7430(c)(1)(A)(i–iv). The fees charged by Plaintiffs' attorneys for their services rendered in the preparation of the Plaintiffs' suit for injunctive relief against the IRS fall squarely within the statute. The reasonableness of those fees is not disputed. Thus, attorney's fees will be awarded to Plaintiffs in the amount of $2,974.

Whether Plaintiffs may also recover the accountant's fees incurred in connection with the earlier action is less clear. Defendants contend that Plaintiffs' accountants merely procured and factually analyzed the Plaintiffs' tax records held by the Chicago District of the IRS. According to Defendants, those services did not demand use of the accounting expertise possessed by the accountants, nor did they pertain to the major issue raised in the case, nor were they ever called upon in an actual trial. Defendants maintain, therefore, that the accountants' expert services were neither utilized in the civil proceeding, nor were they reasonable under 26 U.S.C. § 7430(c)(1)(A)(ii).

Defendants read the words "in the civil proceeding" too narrowly. Clearly, if the accountants' expert services were reasonable for the preparation of the case, it is irrelevant that the accountants were not called upon to testify at trial when no trial, in fact, occurred. Inescapably, there was a civil proceeding even though there was no trial, and the accountants' services were rendered in connection with that proceeding.

Title 26 U.S.C. § 7430(c)(1)(A)(iii) further dictates that the reasonable cost of any study or analysis found by the court to be necessary for the preparation of the party's case may be reimbursed to the prevailing party. More specifically, Congress has stated that "the reasonable amount of fees incurred by a taxpayer for an accountant's study or analysis which is found by the court to be necessary for the preparation of the taxpayer's case is recoverable under an award of litigation costs." H.R.Rep. 97–404, *supra*, at 14, Sen. Finance Comm.Rep., *supra*, at S 15595. We will, therefore, ascertain whether, and to what extent, the accountants' services constituted a study or analysis necessary to preparation of the case.

There cannot realistically be any question that the services which the accountants rendered were necessary to the Plaintiffs' case. Records had to be obtained from the Chicago District of the IRS, and those records had to be analyzed before the Plaintiffs could go forward with their case. However, it is not clear that the final tally of $1,129.50 charged by the accountants was generated by preparations necessary to the Plaintiffs' case. The affidavit of George Violette, a certified public accountant employed by Plaintiffs' accounting firm, attests to the efforts made to gather the IRS's records and to the conclusion drawn by Mr. Violette, based on his familiarity with IRS collection procedures, that the IRS might attach more of Plaintiffs' assets without giving Plaintiffs any notice. The analysis of the IRS's conduct made by Mr. Violette and his firm was an expert determination which conceivably alerted Plaintiffs to the gravity of their situation, and to the necessity of legal redress. Al-

though there is no evidence that Plaintiffs' accountants used any accounting skills *per se,* they did utilize their expertise in tax matters to make an analysis of Plaintiffs' situation which this Court finds to have been "necessary for the preparation of the party's case."

Plaintiffs are not, however, entitled to the full extent of the fees charged by the accountants in this case. Many of the expert services that the accountants rendered would have had to have been done by Plaintiffs' attorneys if Plaintiffs had failed to enlist their accountants' aid first. Had that been the case, under 26 U.S.C. § 7430(c)(1)(A)(iv), which provides for the award of attorney's fees, there would be no dispute that Plaintiffs could be reimbursed for the reasonable costs of those services. As a matter of policy, we find that Plaintiffs should not be penalized for turning initially to the tax expertise of their accountants rather than to members of the legal profession. The initial determinations of either the accountants or the lawyers would have been the same in this case: that the IRS had acted improperly in seizing Plaintiffs' tax refund. That conclusion was obviously essential for the initiation and preparation of the case. Plaintiffs should therefore be able to recover the costs of the making of that assessment, regardless of whether it was made by accountants or attorneys. However, at the point in this case where the complaint had been filed, clearly Plaintiffs' attorneys had the matter well in hand. Therefore, this Court must determine at which point Plaintiffs' accountants' services were no longer necessary for the preparation of the case of which Plaintiffs' attorneys had assumed control.

Congress has stated that

[t]he determination of what constitutes a reasonable amount for the expenses, costs and fees actually incurred by a taxpayer in a civil tax action is to be made by the court hearing the action. The court's determination … may be made on the basis of detailed affidavits submitted to the court, which state the actual time expended and the rate at which fees and other costs and expenses were computed.

H.R.Rep. 97–404, *supra,* at 14, Sen. Finance Comm.Rep., *supra,* at S 15595.

The record reflects the accountants' itemized statement of services provided, including charges for consultations with IRS officials, tax research, and conferences with the Plaintiffs. Chronologically, all of those services were rendered in, and were no doubt necessary to, the initial phases of Plaintiffs' preparation for the civil action. Plaintiffs' accountants' bill also shows three conferences between the accountants, Plaintiffs and Plaintiffs' attorneys. The accountants' itemized statement provides no description of the purpose of these meetings, or their role within them. However, examination of the statement provided to the Court by Plaintiffs' attorneys reveals that one five-hour-long conference accomplished completion of the pleadings and affidavits, including the affidavit of Mr. Violette. I conclude that this conference was necessary to preparation of Plaintiffs' case. The content of another four-and-a-half-hour-long conference is not similarly detailed, however. The Court, therefore, cannot discern the accountants' role in this conference. Since it is impossible for us to determine whether the accountants provided services necessary to preparation of the case, or merely services duplicative of the attorneys' efforts, we find that Plaintiffs cannot recover the costs for the accountants' services provided at this meeting. A third discussion between Plaintiffs' accountants and attorneys which occurred during the week ending August 20, 1983, both after the complaint was filed and after the stipulated entry of judgment was in progress, was clearly not aiding "preparation" of the case and may not be reimbursed under § 7430.

It is within the Court's discretion to award attorney's fees, other fees, and costs under § 7430. Similarly, it is up to the Court to determine a reasonable amount for the services incurred on Plaintiffs' behalf by those professionals involved in this

case. This Court finds that of the total figure of $1,129.50 billed to Plaintiffs for their accountants' services, the sums of $315 and $70 for the conferences discussed earlier will be disallowed. Therefore, this Court awards Plaintiffs $744.50 for their accountants' fees, pursuant to 26 U.S.C. § 7430. Plaintiffs' attorneys' fees generated by Plaintiffs' action for injunctive relief will be awarded in full.[3]

Accordingly, it is *ORDERED* and adjudged that Plaintiffs recover of the Defendants:

(1) Attorneys' fees herein in the amount of $2974.00;

(2) Accountants' fees in the amount of $744.50; and

(3) All costs as provided by statute.

Judgment to enter forthwith.

So ORDERED.

---

**3.** Title 26 U.S.C. § 7430(b)(1) provides that the fees and costs which may be awarded to the prevailing party shall not exceed $25,000. This Court anticipates that the total amount of fees and costs requested by Plaintiffs will not approach this maximum limit. Therefore, no other limitation need be imposed upon the award of Plaintiffs' attorneys' fees, such as a maximum hourly rate for attorney's services imposed by similar statutes which award attorney's fees. *Cf.* 28 U.S.C. § 2412.