Shirley A. LOJESKI

v.

Richard BOANDL, et al.

Civ. A. No. 84–3591.

United States District Court,
E.D. Pennsylvania.

Aug. 23, 1985.

John R. Crayton, Doylestown, Pa., for plaintiff.

Rachel Shao, Asst. U.S. Atty., for defendant.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

On January 23, 1985, after trial, this court issued a memorandum opinion and order granting judgment to plaintiff, Shirley A. Lojeski, in the amount of sixty-seven thousand dollars ($67,000.00) against defendants Richard Boandl and George Jessup. On March 26, 1985, we granted the motion of the defendants to alter or amend the judgment on the basis of the amount awarded, and we entered a new judgment for plaintiff and against the defendants in the amount of thirty-seven thousand five hundred dollars ($37,500.00). Presently before this court is plaintiff's Application for Attorney's Fees ("Application"), pursuant to 26 U.S.C. § 7430, in the amount of thirteen thousand eight hundred ninety-two dollars and sixty-four cents ($13,892.64).

For the reasons which follow, we grant plaintiff's Application; however, we reduce the amount of the fee to $4,768.00 plus expenses of $1,836.64, a total of $6,604.64.

In civil proceedings involving tax issues, Congress has expressly provided that a party may be awarded attorney's fees against the United States. Section 7430 provides in pertinent part:

(a) In general.—In the case of any civil proceeding which is—

(1) brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, and

(2) brought in a court of the United States (including the Tax Court and the United States Claims Court), the prevailing party may be awarded a judgment for reasonable litigation costs incurred in civil proceeding.

Defendants argue that plaintiff is not entitled to counsel fees because she failed to name either the United States or the Internal Revenue Service as a party in the proceedings. In addition, defendants claim that the plaintiff has failed to establish that she was the prevailing party.

Plaintiff, however, argues that although her action was initiated against defendants Boandl, et al., it was "in substance an action against the Internal Revenue Service and the United States government" and thus, within the scope of § 7430, because the defendants have been given "access to the vast resources of the federal government at no personal cost" and "[t]he Internal Revenue Service has agreed to pay the personal judgments rendered against the United States." (Plaintiff's Application, p. 2).

■ In this court's Memorandum Opinion and Order dated March 26, 1985, we held that defendants' sovereign immunity defense was inappropriate since suit was initiated against defendants in their individual capacities and not against the federal government. In that action involving issues of liability and damages, there existed no express statute permitting suit against

the United States; however, this is not the case with the issues *sub judice*. Section 7430 expressly authorizes payment of attorney's fees by the United States in civil proceedings brought by or against the United States. In view of the explicit language of the statute and the intent of Congress in enacting this Section, we can only conclude that plaintiff's Application has been properly initiated pursuant to § 7430. Congress intended that the awarding of fees under 26 U.S.C. § 7430 will deter abusive actions and overreaching by the Internal Revenue Service and will enable individual taxpayers to vindicate their rights regardless of their economic circumstances. *Kaufman v. Egger*, 584 F.Supp. 872, 879 (D.Me.1984) *quoting* H.R.Rep. No. 404, 97th Cong., 2nd Sess. 16 (1982). Therefore, we must conclude that for purposes of reviewing an application for attorney's fees under section 7430, the action *sub judice* is, indeed, one against the United States, in furtherance of the stated and unambiguous intentions of Congress.

Before a party may be awarded attorney's fees and expenses pursuant to § 7430, that party must have met several criteria. First, all administrative remedies made available by the Internal Revenue Service must be exhausted prior to the pursuit of civil action. 26 U.S.C. § 7430(b)(2). Compliance with this requirement is not at issue in this case since an administrative review was conducted regarding the activities which precipitated the underlying action.

■ Second, the party seeking relief must have prevailed in the earlier action. If the parties are not in agreement as to which party prevailed, the court must make the determination. 26 U.S.C. § 7430(c)(2)(B). Section 7430(c)(2)(A) facilitates this determination, providing that:

(A) in general.—the term "prevailing party" means any party to any proceeding described in subsection (a) (other than the United States or any creditor of the taxpayer involved) which—

(i) establishes that the position of the United States in the civil proceeding was unreasonable, and

(ii)(I) has substantially prevailed with respect to the amount in controversy, or

(II) has substantially prevailed with respect to the most significant issue or set of issues presented. 26 U.S.C. § 743(c)(2)(A).

Clearly, plaintiff has "substantially prevailed" with respect to the most significant issue[s] presented, those of liability and damages resulting from the constitutional violations suffered at the hands of defendants. However, questions arise with regard to the initial requirement that plaintiff establish that "... the position of the United States in the civil proceeding was unreasonable...." 26 U.S.C. § 7430(c)(2)(A). Congress failed to elaborate on this direction as to whether "position in the civil proceeding" refers to the government's position at litigation or to its prelitigation stance. As a result of this ambiguity, there are differing interpretations advanced by the parties *sub judice.* Plaintiff contends that the Internal Revenue Service agents acted unreasonably in seizing plaintiff's property. Defendants' liability with regard to this violation has already been established. Plaintiff further contends that defendants compounded this unreasonable behavior by vigorously defending these clear violations of her constitutional rights. In addition, plaintiff asserts that these actions on the part of the defendants constitute defendants' "position in the civil proceeding", and that this "position" of the defendants is clearly "unreasonable" within the meaning of § 7430. Thus, plaintiff has concluded that "position in the civil proceeding" includes both the prelitigation and litigation stances of the defendants.

Defendants, however, aver that the "position of the United States in the proceeding" refers to their "actions or position in prosecuting or defending the litigation and not the actions upon which the litigation is based." (Defendants' memorandum of law in opposition to plaintiff's Application for Attorney's Fees, pp. 4–5). Defendants conclude, therefore, that their "position" was, indeed, reasonable.

"The legislative history of § 7430 reveals that Congress intended the term 'civil proceeding' to include 'proceedings to enforce a summons, jeopardy assessments, wrongful levies and interpleaders.'" H.R.Rep. 97–404, *supra quoted in Kaufman,* 584 F.Supp. 872, 877 (D.Me.1984). Section 7430(c)(3) states that "civil proceeding" includes civil actions, but that does not make the statement as an exclusive definition of the term. The statute requires that plaintiff establish that the "position of the United States in the civil proceeding was unreasonable"; thus, we must determine to which "position" the standard of reasonableness is to be applied, and also whether the plaintiff has established this "position" to be unreasonable, as directed by § 7430(c)(2)(A)(i).

The court in *Randazzo v. United States Dept. of Treasury I.R.S.,* 581 F.Supp. 1235 (W.D.Pa.1984) considered a similar application for attorney's fees pursuant to § 7430. Recognizing the complete absence of case law addressing the interpretation of § 7430, that court turned to comparable statutes. One such statute is § 2412 of the Equal Access to Justice Act, 28 U.S.C. § 2412, which operates according to similar standards in an effort to determine what action by the United States would be considered unreasonable. As a result, that court concluded that pursuant to § 7430, the reasonableness of the government's position could be determined "by examining not only the facts as revealed in the trial transcript, but also by analyzing the conduct of the parties which culminated in the court action." *Randazzo* at 1236–38, *quoted in Kaufman* 584 F.Supp. at 879.

Since March, 1984, when the *Randazzo* case was decided, two subsequent cases have emerged: *Kaufman v. Egger, supra* and *Feinberg v. United States of America,* No. 84–3220, slip op. (E.D.Pa. Mar. 1, 1985). Their congruent interpretations of § 7430 provide sufficient guidance for this court in our determination of the case *sub judice*

and render unnecessary any discussion of § 2412 and the recent plethora of case law in the third circuit dealing with that section.

*Kaufman* dealt with a situation in which the Internal Revenue Service had failed to comply with its own procedures and regulations resulting in damages to plaintiffs, and a Stipulation for an Entry of Judgment for the plaintiffs was filed by the parties. The *Kaufman* court premised their discussion on the following: that "... where Defendants' Stipulation to a judgment in Plaintiffs' favor implies an admission of the Defendant's wrongdoing, it is necessary to determine whether that guilt was predicated upon the unreasonableness of the Defendants' conduct, or some other factor." *Kaufman* at 878. If the stipulation to judgment by the government was induced by the unreasonableness of its prelitigation conduct, then a court could conclude that this prelitigation position was as unfairly burdensome to the plaintiffs as an unreasonable litigation position would have been, and thus justify an award to plaintiffs via § 7430. *Id.*

In *Kaufman*, the court recognized that the defendants' willingness to stipulate to a judgment which was largely against them indicated "at least a belated knowledge of their wrongdoing." *Kaufman* at 879. The court went on to state that defendants' action, therefore, implied "that although Defendants violated the law, they hoped that the forcefulness of their improper method ... would go unchallenged...." *Id.* When plaintiffs did challenge the government's action, it quickly conceded the dispute. The court concluded that for it to hold "that the Defendants' position was reasonable merely because they stipulated to entry of a judgment against them would be to exhibit an unrealistic view of the facts." *Id.* Such a finding would imply that when the IRS engages in reprehensible and illegal conduct which forces the innocent taxpayer to incur costly legal fees, the victim, rather than the perpetrator, shall bear the penalty for the IRS's misconduct. *Id.* Such an encouragement would be obviously contrary to the congressional

intent underlying the statute. *Id.* Where defendants' unreasonable actions forced plaintiff to seek court relief, it is only equitable that defendants, rather than plaintiff, should have to bear the costs that their conduct generated. *Id.*

Similarly, in *Feinberg* the government agreed to a stipulation of an entry of judgment in favor of plaintiff. However, in that instance it was due to the discovery of additional evidence. Thus, the government's concession was not based on any perceived violations of its own procedures as with *Kaufman*, but rather, as a result of evidentiary matters. Since the government's concession in *Feinberg* could not be construed to be an admission of unreasonable action, the district court directed its attention to the government's litigation stance, and found that the government had not acted unreasonably within the meaning of § 7430.

However, the case *sub judice* more closely resembles *Kaufman* and can be resolved by applying the rationale utilized by that court. The instant case involves a situation similar to that in *Kaufman* in that the defendants' actions were not authorized by the internal operating procedures of the IRS. Although defendants, in the case *sub judice*, did not concede the dispute, a bench trial determined defendants' liability with regard to the violations alleged by plaintiff in her complaint and upon which the original action was commenced.

Defendants assert that their position in the litigation, asserting immunity from suit and failure on the part of plaintiff to state a claim upon which relief could be granted, was not unreasonable. The defendants argue that the "position of the United States" refers to the government's actions in prosecuting or defending the litigation and not the underlying action. The defendants rely on case law interpreting § 2412 of the EAJA. We have disregarded such reliance on these cases in light of the recent *Kaufman* and *Feinberg* decisions, which directly interpret § 7430 and guide this court to an equitable and justified resolu-

534

tion of the case *sub judice.* The concerns identified and discussed in *Kaufman* are identical to those in the case *sub judice.* Here, as in *Kaufman,* plaintiff was forced to initiate court action to challenge the government's unauthorized seizure of her property. As in *Kaufman* the violations suffered by the plaintiff *sub judice* were the result of actions committed by defendant contrary to its own internal IRS procedures. To focus attention on the government's position in the actual litigation rather than its prelitigation stance in an effort to defeat plaintiff's application for attorney's fees would create an inequitable result, in that an innocent taxpayer, the victim, would bear the penalty for the IRS's misconduct. This would undoubtedly be contrary to the intentions of Congress in enacting § 7430. Thus, we reiterate the conclusion of the *Kaufman* court that where defendants' unreasonable actions forced plaintiff to seek court relief, it is only equitable that defendants, rather than plaintiff should have to bear the costs that their conduct generated. *Kaufman* at 879.

Thus, plaintiff has established that she is a prevailing party in keeping with § 7430 and therefore, plaintiff's Application for Attorneys Fees is granted.

In this circuit, the calculation of such an award is governed by the dictates of *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir.1973) (*Lindy I*) and *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir.1976) (en banc) (*Lindy II*).

Under these cases, the first item to be determined is the "lodestar" which consists of two factors: hours of service and the hourly rate of compensation. As noted in *Lindy,* "[t]he value of the attorney's time is generally reflected in his normal billing rate." 487 F.2d 161, 167. The determination as to whether an hourly rate is reasonable is made "by taking into account such factors as the attorney's legal reputation, status and the nature of activity which the attorney performed." *Meisel v. Kremens,* 80 F.R.D. 419, 421 (E.D.Pa.1978). Two oth-

er factors must then be considered to determine the actual fee award: the contingent nature of success and the quality of the attorney's work as reflected by the complexity and novelty of the issues presented, the judge's observations and the amount of recovery obtained. *Lindy I,* 487 F.2d 161, 168.

■ We shall first consider the hours of service rendered by plaintiff's counsel in representing plaintiff in her action for relief. As this court stated in *Hinckley v. E.I. duPont deNemours and Co.,* 583 F.Supp. 11, 13 (E.D.Pa.1983), "[t]he reasonable number of hours is a question of fact to be determined by the court. And the burden is on counsel to file adequately documented applications for fees detailing the time spent for each task. Those who fail to meet that burden do so at their own risk." (citations omitted). We find from plaintiff's itemization set forth in Exhibit "A" attached to the Application that an excessive amount of time is alleged for the services performed. We shall make the necessary adjustments.

Plaintiff's attorney lists eleven and one-half (11.5) hours on 7/11/84, 11/13/84 and 3/5/85 for research of the Bivens actions and T.E.F.R.A. We find that three (3) hours is sufficient and reasonable time to satisfactorily complete this research in light of plaintiff's attorney's skill and experience, and shall reduce that time accordingly.

The four (4) hours spent in the preparation of the complaint 7/16/84 and 7/17/84 are excessive since the issues were not of a complex nature. We shall reduce that time to two (2) hours.

Plaintiff's attorney lists a conference with his client on 7/19/84 immediately prior to filing the complaint without explanation of the necessity for the conference. That conference was unnecessary and we shall not allow that time since any facts which the plaintiff could provide her attorney were probably provided during the first conference between them on 7/5/84, which time we have allowed.

The one and one-tenth (1.1) hours listed for the final review and preparation of the

amended complaint on 7/20/84 and 7/23/84 are not reasonable and shall be excluded. No explanation is given for the necessity of preparing an amended complaint.

The four (4) hours listed for legal research and preparation of Answer to Motion to Dismiss on October 10, 1984, for pre-trial conference of two (2) hours on October 12, 1984 and for four (4) hours of research on I.R.S. manuals on October 19, 1984 are excessive. We shall reduce that total of ten (10) hours to five (5) hours because we find that five (5) hours is adequate time to perform the above services.

Many of the conferences listed by plaintiff's attorney were either unexplained, unnecessary or conducted over too lengthy a time period without adequate justification. We shall, therefore, make the following adjustments with regard to each of the conferences, and itemize each reduction to reach a more reasonable amount of hours worked.

| Date | Service | Plaintiff's Claim | Court's Findings |
|---|---|---|---|
| 10/20/84 | Conference with client and client's accountant | 3.0 | 1.0 |
| 10/27/84 | Conference with client | 2.5 | 0 |
| 11/01/84 | Conference with client and Thomas Treadway | 1.0 | 0 |
| 11/02/84 –11/05/84 | Preparation of depositions of IRS personnel | 7.3 | 2.3 |
| 11/10/84 | Conference with client and Thomas Treadway | 2.5 | 0 |
| 11/13/84 | Conference with client and Thomas Treadway | 1.5 | 0 |
| 11/17/84 | Conference with client and Thomas Treadway | 3.0 | 0 |
| 11/19/84 | Conference with Thomas Sumter, Esq. | 2.0 | 1.0 |
| 11/20/84 | Conference with client and Thomas Treadway | 2.5 | 0 |
| 11/21/84 | Conference with Olive Solomon | 2.0 | 0 |
| | TOTAL | 27.3 | 4.3 |

Of the twenty seven and three tenths hours (27.3) requested, we find that four and three tenths (4.3) hours should be included in awarding plaintiff's attorney's fees.

In addition to these reductions, we find that plaintiff's attorney has overstated the amount of time necessary for an attorney of his experience to competently complete various legal documents. For this reason, we make the following adjustments:

| Date | Service | Plaintiff's Claim | Court's Findings |
|---|---|---|---|
| 11/14/84 | Preparation of pre-trial memo, Findings of Fact, Conclusions of Law | 8.0 | 2.0 |
| 11/15/84 | Preparation of Answer to Motion to Dismiss | 3.0 | 1.0 |
| 2/12/85 & 2/14/85 | Preparation of Answer to Motion to Amend Judgment | 11.5 | 1.0 |
| | TOTAL | 22.5 | 4.0 |

Thus, we reduce the twenty-two and five tenths (22.5) hours as requested by plaintiff's attorney to four (4) hours.

Finally, the amount of hours spent in preparing for the trial is clearly unreasonable in light of the relatively uncomplicated issues put before this Court. Therefore, we reduce the listed 38 hours to 5 hours for trial preparation.

Although plaintiff's attorney requested compensation for one hundred fifty and seven tenths (150.7) hours, we reduce the amount to fifty nine and six tenths hours (59.6) in light of the adjustments discussed above. We conclude that this amount is reasonable and just.

The other component of the lodestar is the hourly rate. Plaintiff's attorney requests a fee of Eighty Dollars ($80.00) per hour. The important determination is what constitutes a reasonable hourly fee in light of all the circumstances of the litigation, *See Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208, 1217 (3d Cir. 1978), and what is reasonable considering the attorney's "experience, knowledge and legal talent." *Lindy II* 540 F.2d 102, 117. Given these criteria, we find Eighty Dollars ($80.00) to be reasonable hourly rate for plaintiff's attorney's services.

Having determined the reasonable number of plaintiff's attorney's services to be fifty-nine and six tenths (59.6) hours and the hourly rate to be Eighty dollars ($80.00), the lodestar figure for plaintiff's attorney is Four Thousand Seven Hundred Sixty-Eight Dollars ($4,768.00).

By taking into consideration the contingent nature of success and the quality of

the attorney's work, we grant plaintiff's attorney the sum of $4,768.00 as reasonable attorney's fees.

Finally, plaintiff also seeks costs of One Thousand Eight Hundred Thirty-Six Dollars and Sixty-Four Cents for additional expenses incurred with regards to filing and postage fees and costs of depositions and witnesses.

Exhibit B

| Expenses | Amount |
|---|---|
| Filing fee | $ 60.00 |
| Postage | 51.39 |
| Deposition Costs | 1,525.25 |
| Witness Fee | 200.00 |
| TOTAL | $1,836.64 |

We find the expenses to be reasonable and award plaintiff's attorney the full amount requested.