Walter GIESECKE, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. SA–84–CA–48.

United States District Court,
W.D. Texas,
San Antonio Division.

Jan. 6, 1986.

D. Hull Youngblood, San Antonio, Tex.,
for plaintiff.

Joseph A. Pitzinger, III, Tax Div., Dept.
of Justice, Dallas, Tex., for defendant.

ORDER

SESSIONS, Chief Judge.

ON THIS DATE came on to be considered the motion of the Plaintiff, Walter Giesecke, to grant Plaintiff his reasonable litigation costs pursuant to 26 U.S.C. § 7430.

This case involved a taxpayer's successful fight with the Internal Revenue Service (IRS) to deduct certain business expenses incurred as a result of promoting the career of a San Antonio chanteuse. Although Mr. Giesecke's efforts led to Bonnie Cortez's appearance on the Mike Douglas show, Plaintiff eventually failed to realize the return on investment he had initially hoped for. The IRS disagreed with the Plaintiff's characterization of the expenses incurred in promoting Ms. Cortez's career as business expenses, and disallowed the deduction on the Plaintiff's tax return. As the jury rejected the IRS's contentions in each of the special questions submitted, the Court entered judgment on September 17,

1985, in the amount of $16,238.86 with interest and costs. That judgment specifically reserved the issue of whether Plaintiff should be awarded his reasonable attorney's fees pursuant to 26 U.S.C. § 7430.

■ On September 10, 1985, the Court received the Defendant's motion for litigation costs and brief in support thereof. On September 24, 1985, the United States filed a response in opposition to Plaintiff's motion for attorney's fees. Although the United States filed a notice of appeal on November 14, 1985, this Court retains jurisdiction to decide the issue of attorney's fees as that issue was specifically reserved by this Court in the Judgment the United States now appeals.

An award of attorney's fees in a tax refund case is governed by Section 7430 of the Internal Revenue Code, 26 U.S.C. § 7430. Although this statute is somewhat analogous to the Equal Access to Justice Act, 28 U.S.C. § 2412, there are two important differences: (1) recovery of fees and expenses is limited to $25,000.00; and (2) fees may be awarded only if the Government's position is "unreasonable." *See* 26 U.S.C. § 7430(b).

There are three requirements set forth by the statute:

1. That the Plaintiff exhaust his administrative remedies.
2. That Plaintiff prevail on the merits of his claims.
3. That the position of the United States in litigating the matter was "unreasonable."

26 U.S.C. § 7430(b) and (c). The Government and the Plaintiff both agree that Plaintiff has satisfied the first two requirements of the statute. *See* Briefs on Motion for Litigation Costs. The issue before the Court is simply whether the litigation position of the United States was "unreasonable." If the Court so finds, then the Court must award reasonable attorney's fees and costs subject only to the $25,000 cap of Section 7430.

Plaintiff's motion for litigation expenses is divided into three sections. Each section addresses a different defense by the Government to Plaintiff's claim for refund, including the argument that Plaintiff's expenditures were merely in pursuit of a "hobby," that the expenses incurred were not "ordinary, necessary, and reasonable in amount," and that the advances to Ms. Cortez were loans rather than advances of expense money. In general, the Plaintiff advances those arguments that he successfully made to the jury at trial to support his argument that the Government's position was unreasonable. In turn, the United States merely re-argues its trial position that was to support the IRS's contention that its position was *not* unreasonable.

Although Plaintiff's motion does lay the groundwork for the Court's decision as to whether or not the Government's position was "unreasonable," it fails to delineate the exact standard that the Court must use. The Government also fails to present any standard to this Court as to what standard the Court must use to determine whether or not their opposition to Plaintiff's claim for a refund was "reasonable." The failure of both parties to address the exact standards, however, stems more from a dearth of specific authority than from a failure to adequately research the issue.

The Court located three published opinions under this statute to aid in its analysis, and in all three cases the court awarded attorney's fees. In the first case, the United States District Court of Maine held that there was "no dispositive difference between" a finding that the Government's litigation stand was "unreasonable" and a finding that the Government was "substantially justified" as required by the Equal Access to Justice Act (28 U.S.C. § 2412). *Kaufman v. Egger*, 584 F.Supp. 872, 877 n. 1 (D.Me.1984). Although the facts of the *Kaufman* case are such that its analytical value to the Court in this case is limited, *Kaufman* does set forth the factors listed in Section 7430's legislative history that the Court should take into account in determining reasonableness:

(1) whether the Government used the costs and expenses of litigation against its position to extract concessions from the taxpayer that were not justified under the circumstances of the case,

(2) whether the Government pursued the litigation against the taxpayer for purposes of harassment or embarrassment, or out of political motivation, and

(3) such other factors as the Court finds relevant.

*Id.* at 878, *quoting with approval,* H.R. Rep. No. 97–404, 97th Cong., 2nd Sess. 16 (1982).

In *Penner v. United States,* 584 F.Supp. 1582 (S.D.Fla.1984), the District Court was faced with another unusual fact situation where the Government failed to make adequate inquiries into the facts before assessing a "jeopardy" penalty (a "jeopardy" assessment is basically a front-end payment to the IRS prior to its review of a taxpayer's situation in order to protect the IRS should it find that the defendant had underreported income). The *Penner* Court unfortunately did not set forth any specific test that this Court might use to determine whether the IRS's current position was "unreasonable." Of similar character is *Hallam v. Murphy,* 586 F.Supp. 1 (N.D.Ga. 1983), where the Court imposed costs upon the United States because they continued to pursue the collection of taxes even after the Government was aware that it had never properly notified the plaintiffs of the deficiency. The *Hallam* opinion, however, is useful to the Court in the respect that it holds that a court should not look at the IRS's position at one isolated point in the litigation process, but should consider the entire process; and if the Court finds that the IRS received information in the course of the process that should convince it to drop the litigation, then it is unreasonable for the IRS to not drop the litigation upon the receipt of such information. *Id.* at 3.

Since the Court finds little direction in the Section 7430 cases, the Court must turn to the more extensively litigated question of whether the Government's position was "substantially justified" under the Equal Access to Justice Act (EAJA) as suggested by the *Kaufman* Court. 584 F.Supp. at 877 n. 1. In *Russell v. National Mediation Board,* 775 F.2d 1284 (1985), the Fifth Circuit Court of Appeals reviewed the standard of "substantial justification" in cases brought under the EAJA. The Fifth Circuit found that the test of whether or not a Government action is substantially justified is essentially one of "reasonableness," and requires the Government to establish that its position has a reasonable basis both in law and in fact. *Id.* At 1288–89. The Fifth Circuit also noted that a District Court's award of attorney's fees under the EAJA may only be overturned for an abuse of discretion. *Id.*

■ While the Court is thus faced with a decision with little exact guidance, the legislative history does provide the Court with some general guidance. As to the second factor noted in the legislative history, it does not appear that the Government pursued the litigation against the taxpayer in this case for "purposes of harassment or embarrassment, or out of political motivation ..." H.R.Rep. No. 97–104, *supra.* After due consideration, however, the Court does conclude that the Government's position was not "substantially justified", and therefore "unreasonable" pursuant to the first and third factors set forth by the legislative history, *id.,* for the reasons set forth below.

In *Levy v. The Commissioner,* 30 T.C. 1315 (1958) (A), 1959–1 CB4 (1959), the Tax Court was faced with a situation almost identical to the facts presented in the instant case. The Tax Court held that advances for living expenses and payments to professionals to do work which the taxpayers were otherwise contractually obligated to do are ordinary and necessary expenses for an "artists representative." As the IRS issued a formal acquiescence in this decision in 1959, *see* 1959–1 C.B. 1, 3 (1959), the Government should have been bound by its own official policy to follow the *Levy* case in deciding whether to litigate the instant action. *See* Saltzman, *IRS Practice and Procedure,* § 3.04[4] (1981).

The Government failed to present evidence or cross examination that convinces the Court that Plaintiff Giesecke's situation was any different from the taxpayer who was allowed deductions in *Levy*. As the Fifth Circuit requires that the Government's position must be reasonably based upon both fact *and* law, the Government failed to show why the *Levy* precedent should not have been followed by the IRS in this case. *See Russell v. National Mediation Board, supra* (and Court's discussion, *supra*). As the courts have found substantial justification where the Government's position is supported by case law or is of first impression; *see Foster v. Tourtellotte*, 704 F.2d 1109 (9th Cir.1983), *AAB-CO, Inc. v. United States*, 3 Cl.Ct. 700 (1983), by analogy there would be no "substantial justification" where a case precedent is clearly against the Government's litigation position, and thus the Government's position would be "unreasonable."

The Court's analysis thus leads to a consideration of the first factor mentioned by the legislative history, "whether the government used the costs and expenses of litigation against its position to extract concessions from the taxpayer that were justified under the circumstances of the case ..." H.R.Rep. No. 97–104, *supra*. In the face of a compelling case precedent that it had acquiesced to, the IRS nevertheless failed to agree to any settlement, and not only insisted upon trying the instant case, but has also appealed it. The Court fails to see any rationale for the government's current strategy, unless it perhaps is trying to force the Defendant to either settle or dismiss based upon the continuing expenses of litigation. In the instant case, the Plaintiff was awarded only approximately $17,-000.00. The Court believes that it is unlikely that Plaintiff's litigation costs to this point could be any less than $10,000.00 due to the trial and appellate representation required by the IRS's intransigence. A taxpayer seeking a refund may reach a point where he realizes that it is simply not cost effective to pursue a valid position, unless he can afford to pay a heavy price to vindicate his principles. Section 7430 is Congress' shield to a deserving taxpayer doing battle with the IRS, and the Court finds that Plaintiff merits Section 7430's protections.

After due consideration of the evidence presented, and the law adduced, the Court is of the opinion that the Government's position in this litigation has been "unreasonable" and calculated to force the Plaintiff to settle or dismiss because it would not be economically feasible to spend in excess of the amount sought by refund because the IRS failed to follow clear precedent on points that it had acquiesced to more than 25 years ago. The very purpose of "acquiescing" by the IRS is to establish guidelines for the service, the administrative process, and the courts, to avoid disputes such as those now before the Court. The Court thus finds that Plaintiff should be awarded his reasonable attorney's fees pursuant to 26 U.S.C. § 7430.

In order to comply with the Fifth Circuit's direction that reasonable notice and an opportunity to be heard should be given where an award of attorney's fees is made, the Court will require that the Plaintiff file within ten (10) days of this Order an affidavit setting forth the reasonable attorney's fees and costs claimed pursuant to 26 U.S.C. § 7430 and the factors set forth in the Fifth Circuit's opinion in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). The Government shall have ten (10) days after the filing of such an affidavit to respond with any objections thereto. The Court will then consider the materials submitted and will issue an appropriate Order. Therefore,

IT IS HEREBY ORDERED that the Plaintiff's motion for reasonable litigation expenses pursuant to 26 U.S.C. § 7430 be and is hereby GRANTED.

IT IS FURTHER ORDERED that the Plaintiff submit within ten (10) days of this Order an affidavit and brief consistent with this Court's opinion setting forth its claim for reasonable attorney's fees and costs.

IT IS FURTHER ORDERED that the Defendant be given ten (10) days within

which to file any objections to the Plaintiff's claim.